OPINION OF THE COURT
Benjamin Altman, J.
Should a defendant indicted for double murder, matricide and patricide — who is found by the court to be dangerous to himself and others — conceded by both sides to be presently incompetent, be given Jackson relief?
Under the facts here the response is negative.
The defendant has made a motion pursuant to Jackson v Indiana (406 US 715). Defendant’s motion is for conversion to civil status based on the Jackson case. (Jackson relief is civil commitment status granted to an individual under criminal indictment who has been declared incompetent and in the foreseeable future will not become competent.)
A hearing was held and testimony taken from Doctors Klopf, Naomi Goldstein, Gitta De Sai and Mr. Hillel Bodek as well as Ms. Carol Saginau of the Office of Mental Health.
After hearing all the testimony, the court finds that the defendant is dangerous to others and himself and would require indefinite in-patient care in a secure facility.
Defense does not deny that the defendant would require in-patient care at this time. Among other areas of testimony which have been elicited, Dr. Klopf, appearing on *894 behalf of the defendant, stated that not only does defendant have “extreme distress and anger towards his doctor and lawyer”, but that he represents a very real specific and frightening threat to his sister who is still alive, and living in the metropolitan area.
All the testimony elicited indicates that the defendant needs in-hospital care; the defendant cannot care for himself and he needs to be kept in a secure facility because he has indicated on many occasions that he wanted “out” and in fact, during the hearing asked the court whether he could leave.
Mr. Gans is an escape risk or an “elopement” risk (as it is called in psychiatric terms) and escape is not only possible, but not uncommon from locked wards. (Testimony of Carol Saginau from the New York State Office of Mental Health.)
Everyone who testified indicated the defendant would get better treatment at Mid-Hudson than any other place. This court finds that if the defendant were converted to civil status — civil commitment — he would not be eligible for that facility as a practical matter. Defendant’s counsel suggests that if the court orders the Office of Mental Health to have defendant housed at Mid-Hudson in civil status, that that would take care of the court’s concern, i.e., that defendant would not get the appropriate care, treatment and supervision that Mr. Gans needs. Realistically, no court in this regard can tell, compel or order an executive branch of this State government where or how to house this defendant.
The court finds that another facility other than Mid-Hudson would be far less secure and elopement or escape, especially with the defendant’s expressed intent to get out, would become a real probability, not only a possibility.
ISSUE OF DANGEROUSNESS
The court in People v Arendes (92 Misc 2d 372) decided dangerousness was irrelevant to determine as to whether or not to grant Jackson relief.
This court disagrees with such determination. The defendant’s commitment is not based, as it was in Jackson (supra), on criminal charges alone. In Jackson, the defen *895 dont Jackson, a mentally defective deáf mute, was not dangerous, was not receiving the treatment for his condition at the place of confinement, and but for his criminal charges, would have been released under Indiana law.
In Jackson (supra), the court noted that under Indiana law, Jackson faced indefinite commitment. The United States Supreme Court held that Jackson could not be so committed, at least without a showing that he was dangerous to others or unable to take care of himself. While the court held that Jackson’s commitment violated due process, it indicated that due process was violated because it was not supported by any of the various justifications requisite to an extended commitment of mentally ill persons, namely, and I quote, “[Djangerousness to self, dangerousness to others, and the need for care or treatment or training.” (Jackson v Indiana, supra, at p 737.)
In commenting on the State’s powers exercised to commit persons found to be mentally ill, the court said (pp 736-737) “The substantive limitations on the exercise of this power and the procedures for invoking it vary drastically among the States. The particular fashion in which the power is exercised — for instance, through various forms of civil commitment, defective delinquency laws, sexual psychopath laws, commitment of persons acquitted by reason of insanity — reflects different combinations of distinct bases for commitment sought to be vindicated.”
The United States Supreme Court went on to say (pp 737-738)
“The bases that have been articulated include dangerousness to self, dangerousness to others, and the need for care or treatment or training. Considering the number of persons affected, it is perhaps remarkable that the substantive constitutional limitations on this power have not been more frequently litigated.
“We need not address these broad questions here. It is clear that Jackson’s commitment rests on proceedings that did not purport to bring into play, indeed did not even consider relevant, any of the articulated bases for exercise of Indiana’s power of indefinite commitment.” (All emphasis supplied by this court except the preceding word “any”.)
*896 Defendant contends that civil commitment would satisfy the requisite need for care or treatment or training. Again, testimony elicited indicated that civil commitment is hardly secure, that easy “elopement” is not unusual. Defendant’s counsel does not discuss dangerousness to others or to self in the petition.
The defendant contends himself with the passing comments that he is not dangerous either to others or to himself. Evidence elicited indicates that it is not so.
In sum, Jackson relief is denied since there is no mandatory requirement for such relief: criminal offenses are not the sole basis in this State for a defendant’s hospitalization.
The court in finding defendant Gans incompetent does not have to reach the decision as to whether the defendant has a substantial likelihood of being fit for trial purposes in the future; since this court has denied Jackson relief, it need not reach that issue at this time. The court does note, however, that on seven different occasions, the defendant has been found fit after he had been found unfit. In this regard, there is a distinct difference between Mr. Gans and defendant Arendes in People v Arendes (supra). The latter was never certified as fit.
Upon defendant’s return to Mid-Hudson, if he should be found fit, this court strongly advises that the case against the defendant if and when the case against the defendant comes to trial, the venue of same should be changed from New York County to Orange County, and during the pendency of the proceedings against him that Mr. Gans continue to be housed at Mid-Hudson.
In this respect, any proceedings involving this defendant should be held in the county of detention; and as to that, the court suggests an examination of People ex rel. Ardito v Trujillo (109 Misc 2d 1009) and in particular CPLR 7004 (subd [c]).
The defendant’s motion for conversion to civil status is denied.