Jacob Markowitz, J.
This is an application under CPL article 7SO by the People of the State of New York for continued retention of the defendant patient at Matteawan State Hospital *9 on the ground that he is “ a dangerous incapacitated person ”. Periodic review of such confinement is required.
Defendant patient, aged 28, had been a civil State mental hospital patient since he was 12. In August, 1965, while a patient at Manhattan State Hospital, he was indicted for the murder of another patient. He was found incompetent to stand trial and was transferred to Matteawan State Hospital, a facility under the jurisdiction of the Commissioner of Correction (Correction Law, art. 16; Mental Hygiene Law, § 11). Upon notice to him of the instant application, he requested a hearing to determine the need for his continued hospitalization at Matteawan as a dangerous person. He contends that he should be transferred to a civil institution.
In 1965 indictment on a felony charge and a finding of incompetency to stand trial sufficed under the Code of Criminal Procedure for commitment to Matteawan State Hospital. The statute did not mandate court inquiry into the dangerousness of the defendant and no such inquiry was made. Also, it does not appear that the prevailing practice for transferring a. civil mental patient to a criminal facility on account of 11 dangerousness ’ ’ was followed (see Mental Hygiene Law, § 85).
The Manhattan State Hospital record shows that at the age of 16, he was admitted to that institution on December 22, 1960, with a diagnosis of schizophrenia, childhood type. The same diagnosis had been made at all prior institutions in which he was a patient. After indictment and psychiatric examination, the diagnosis was changed to schizophrenia, paranoid type.
Under current procedures, a person charged with a crime who as “ a result of mental disease or defect lacks the capacity to understand the proceedings against him or to assist in his own defense ” (CPL 730.10, subd. 1), may be confined in a Department of Correction facility, such as Matteawan only when he has been judicially designated a ‘ ‘ dangerous incapacitated person ”, or when a court order so directs (CPL 730.60, subds. 1, 3). “Dangerous incapacitated person ” is one who is so mentally ill or mentally defective that his presence in an institution operated by the Department of Mental Hygiene is dangerous to the safety of other patients therein, the staff of the institution or the community (CPL 730.10, subd. 2). Civil patients who are deemed dangerous may also be transferred to a Correction Department facility by procedures instituted under section 85 of the Mental Hygiene Law.
In Baxstrom v. Herold (383 U. S. 107) it was held that a convict civilly committed at the end of his prison sentence was *10 denied equal protection of the laws when he was deprived of a jury trial the State made generally available to all other civilly committed persons. ‘ ‘ Baxstrom * * * sparked an awareness that we cannot tolerate two classes of insane persons — criminal and non-criminal — when we are asked to examine commitment procedures available to both ”. (United States ex rel. Schuster v. Herold, 410 F. 2d 1071, 1081 [C. A. 2d], cert. den. 396 U. S. 847).
In Jackson v. Indiana (406 U. S. 715) the Baxstrom rule was applied to a mental defective charged with crime and found incapable of standing trial, on .the ground that if criminal conviction and imposition of sentence are insufficient to justify standards of commitment more stringent than are generally applied to others, certainly the mere filing of charges is not enough. (See People v. Lally, 19 N Y 2d 27; Commonwealth v. Druken, 356 Mass. 503.)
Jackson (supra), as does the instant case, was concerned with a mentally incompetent person under indictment but found incapable of being tried, and unlikely to attain that capacity in the foreseeable future, who was retained for a period of years under a State statute applicable only to persons charged with offenses. This double standard was held to be a denial of equal protection of the laws and a violation of due process.
The import of Jackson to the instant proceeding is that the patient here involved can no longer be confined under the provisions of article 730 of the GPL, but must be afforded the procedures available to civil patients under article 5 of the Mental Hygiene Law. Due process requires “ that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial ” must be given a hearing after being held for no more than a reasonable period necessary to “ determine whether there is ,a substantial probability. that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.” (Jackson, supra, p. 738; emphasis added).
Although we need not at this juncture determine whether the instant patient could constitutionally be retained at Matteawan even if deemed ‘ ‘ dangerous ’ ’ under civil commitment procedures, some comment seems pertinent.
The inadequacies of the facilities under the jurisdiction of the Department of Correction .as opposed to those under the Department of Mental Hygiene have been noted. (Neely v Hogan, *11 62 Misc 2d 1056; Mental Illness, Due Process and the Criminal Defendant, Second Report by Special Committee on the Study of Commitment Procedures and the Law Relating to Incompetents of the Association of the Bar of the City of New York [1968] Fordham TJ. Press.)
In Matter of Anonymous (69 Misc 2d 181, revd. 39 A D 2d 410) Special Term after finding a civil mentally ill patient to be dangerous to others, refused to permit his commitment to Matteawan as required by the Mental Hygiene Law, on the ground that such commitment would be a violation of his constitutional rights to equal protection of the laws and substantive due process. The tenor of the Special Term decision is that Matteawan is more concerned with maximum security than with treatment. This conclusion was rejected on appeal, the appellate court holding that section 85 of the Mental Hygiene Law which mandates the transfer of a civilly committed patient to Matteawan following a determination that he is “ dangerously mentally ill ’ ’ is constitutional.
Despite the holding in Matter of Anonymous (supra), the question is still not free from constitutional doubt. (See United States ex rel. Wolfersdorf v. Johnston, 317 F. Supp. 66, cited with approval in Jackson, supra, p. 735.) Moreover, as indicated in the dissenting opinion in Matter of Anonymous, the question may be resolved by executive action in providing additional maximum security facilities in civil State hospitals. In any event, the import of Matter of Anonymous in this case need not now be determined.
The pending application is granted to the extent only of permitting defendant to be retained as heretofore for a period of 30 days from the date of the order to be signed hereon. In the interim, the Commissioner of Mental Hygiene is directed to institute civil retention proceedings pursuant to article 5 of the Mental Hygiene Law.