Arnold L. Fein, J.
Petitioner, hospitalized at Dunlap-Manhattan State Hospital pursuant to article 730 of the OPL, brings this habeas corpus proceeding for an order directing that the hospital convert him to civil status.
Petitioner was indicted for robbery, .first degree, on December 23,1957. Prior to his indictment, he had been hospitalized in psychiatric hospitals four ¡times, the first in February, 1951. After his indictment, he was sent to Bellevue Psychiatric Hospital. On February 3, 1958, he was found incompetent to stand trial on the indictment and was committed to Matteawan ¡State Hospital pursuant to section '662-b of the 'Code of Criminal Procedure.
On August 20, 1971, he was transferred to Dunlap-Manhattan State Hospital, from which he was discharged in October, 1971, and returned to the Tombs as competent to stand trial. On December 27, 1971, pursuant to article 730 of the CPL, he was recertified as incapacitated .to stand trial. He was remanded to the Mid-Hudson Psychiatric Facility, where he remained until September 20, 1972, when he .was retransferred to Manhattan State Hospital. On January 11, 1973, an order of reten *880 tion for a ¡period not to exceed 12 months, pursuant to article 730 of the CPL was signed ¡by Mr. Justice Frank of this court.
Thus, he has been in State mental hospitals for 16 years, as an indicted defendant incapacitated to stand trial.
On the hearing on the writ, it was stipulated that the probabilities are that petitioner will never become competent to stand trial and that he is making no progress towards the goal of attaining capacity to ¡stand trial. This conclusion was supported by the 'clinical summary of the hospital psychiatrist, dated October 23, 1973, and the report of the court appointed independent psychiatrist, dated September 27, 1973. Both psychiatrists diagnosed petitioner’s condition as “ schizophrenia, paranoid type ’ ’ and concluded that it is unlikely that he will ever be well enough psychiatrically to stand trial. Both reports indicate that continued custody, care and treatment are required. There is no evidence that he is presently dangerous to himself or others.
Petitioner contends: (1) it is a denial of due process of law to fail to convert him to civil status, since he is unlikely ever to recover capacity to stand trial and is making no progress toward that goal; and (2) since he is unlikely ever to recover capacity to stand trial and is making no progress toward that goal, it is a denial of equal protection of the laws to continue to retain him pursuant to article 730 of the CPL, and thus to deprive him of care, treatment and privileges afforded to other persons confined in such mental institutions, and to subject him “to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses.” (Jackson v. Indiana, 406 U. S. 715, 730.)
Jackson (supra), like the present case, was concerned with a mentally incompetent person under indictment but found incapable of being tried and unlikely .to attain that capacity in the foreseeable future, who was retained for a period of years under an Indiana statute applicable only to persons charged with offenses. The Supreme Court, following the rationale of Baxstrom v. Herold (383 U. S. 107), that “ we cannot tolerate two classes of insane persons — criminal and non-criminal,— when we are asked to examine commitment procedures available to both” (United States ex rel. Schuster v. Herold, 410 F. 2d 1071, 1081, cert. den. 396 U. S. 847), held that “ subjecting Jackson to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses, and by thus *881 condemning him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release afforded [to others not so charged] deprived petitioner of equal protection of the laws under the Fourteenth Amendment.” (Jackson v. Indiana, 406 U. S. 715, 730, supra.)
Respondent seeks to distinguish Jackson upon the ground that the Indiana statute there involved, unlike the New York statute, did not make provision for periodic review and for a maximum period of commitment. CPL 730.50 provides that where a defendant is in the custody of the commissioner pursuant to an order of commitment as an incapacitated person, periodic applications for retention must be made. The first retention is limited to one year. Subsequent retentions may not exceed two years. The aggregate of all of the periods prescribed in the orders of retention must not exceed two thirds of the authorized maximum term of imprisonment for the highest class felony charged in the indictment.
However^ these provisions do not meet the standard laid down in Jackson. The court to which the application for retention is made pursuant to GPL 730.50 has only two alternatives. If the court finds defendant is no longer incapacitated, the criminal action against him must proceed. If defendant continues to be incapacitated, he is subject to continuing two-year orders of retention, limited only to a total of two thirds of the maximum sentence for the highest -class felony charged in his indictment, although he has never been tried for, or convicted of such felony. Obviously he is subject to different standards for release than those applicable to persons not indicted but civilly committed because of the same mental condition.
Thus, here, where petitioner was indicted for robbery, first degree, subject to a maximum sentence of 30 years under section 2125 of the old Penal Law, GPL 730.50 .requires his retention for at least 20 years unless sooner found capacitated to stand trial. It is not without significance that persons indicted for robbery, first degree, a class B felony, after September 1, 1967, for events occurring after that date, are subject to a maximum sentence of 25 years (Penal Law, § 70.00, ,subd. 2; § 160.15). Under CPL 730.50, such persons could only be retained for 16 years, eight months. Obviously, the CPL 730.50 standards for retention bear no relationship to the purposes of the detention. Although the court now finds petitioner is unlikely ever to recover capacity to stand trial and is making no progress toward that goal, after 16 years in custody, article 730 of the CPL requires that he be held four more years or a total of at *882 least 20 years. Persons not charged with crime, suffering from the same condition, held in civil custody are subject to no such stringent standard. That there are other distinctions between the commitment and release standards applicable to indicted persons committed because incapacitated and those involuntarily hospitalized pursuant to the Mental Hygiene Law, is manifest on the face of the respective .statutes, GPL 730.10 and section 31.01 of the Mental Hygiene Law.
There is some dispute, not necessary to resolve, whether petitioner, not being civilly committed, will receive all the care and treatment suited to his needs under section 15.03 of the Mental Hygiene Law, including ground privileges, work privileges, home .passes and convalescent care, used therapeutically as part of individual treatment plans in efforts to promote rehabilitation and recovery from mental illness, in the light of the expressed security concerns referred to in the directive of Dr. John B. Wright, Assistant Commissioner of Mental Hygiene, with respect to indicted defendants (Department of Mental Hygiene Memorandum No. 71-40, Aug. 9, 1971, from John B. Wright, M. D., Assistant Commissioner to State Hospital Directors).
There is also the possibility of transfer to Matteawan, a correctional facility subject to much criticism, not now constitutionally permissible with respect to patients in civil status. (Matter of Kesselbrenner v. Anonymous, 33 N Y 2d 161.)
The difference in standards of commitment, release and care denies the petitioner the equal protection of the laws.
With respect to due process, Jacksons. Indiana (406 U. S. 715, 738, supra) further held: “At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.”
“We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must *883 be justified by progress toward that goal. ’ ’ (Jackson v. Indiana, 406 U. S. 715, 738, supra.)
Jackson did not fix the “reasonable period” in which to make the determination. (McNeil v. Director, Patuxent Inst., 407 U. S. 245.) Clearly 16 years is far more than a “ reasonable period ’ ’. The nature and duration of the commitment bears no reasonable relation to the purpose for which petitioner was committed. (Matter of Kesselbrenner v. Anonymous, 33 N Y 2d 161.) Refusal to convert him to civil status would deny him due process.
Petitioner has been held far more than long enough to determine whether he is likely to attain the capacity to stand trial. It is found that he has no such capacity, has no likelihood of attaining such capacity, and is making no progress toward that goal. The only alternatives are civil commitment or outright release. (Jackson v. Indiana, 406 U. S. 715, supra; McNeil v. Director, Patuxtent Inst., 407 U. S. 245, supra; People v. Anonymous [Max], 71 Misc 2d 8; Matter of Kesselbrenner v. Anonymous, 75 Misc 2d 289; Matter of Kesselbrenner v. Anonymous, N. Y. L. J., Aug. 8, 1973, p. 11, col. 4 [Gellinokf, J.]; United States ex rel. von Wolfersdorf v. Johnston, 317 F. Supp. 66.)
Petitioner now iseeks conversion to civil status and not release. Accordingly the writ of habeas corpus is sustained only to the extent that respondent is directed to convert petitioner to civil status pursuant to article 31 of the Mental Hygiene Law.
This decision does not affect the 16-year-old indictment against petitioner. Although petitioner’s application was adjourned to give notice to the District Attorney of New York County, and such notice was allegedly given, no one appeared on behalf of the District Attorney on the hearing. In .the light of this disposition, counsel for petitioner may, if so advised, move in the appropriate Criminal Part of this court for dismissal of the indictment.
The Clerk is directed to forward a copy of this decision to the District Attorney of New York County.
The foregoing is the decision and order of the court to be enforced as such. However, if a formal order of civil commitment is deemed necessary, an appropriate order may be settled on notice.