OPINION OF THE COURT
Richard Goldberg, J.
This is an application for a writ of habeas corpus to obtain a hearing pursuant to Jackson v Indiana (406 US 715). As an indicted person adjudicated incompetent to stand trial, Ardito seeks such a hearing to convert her criminal commitment to civil status. Respondent urges that the relief sought by petitioner is properly available only by notice of motion and not by writ of habeas corpus. Respondent has also moved for an order that the Jackson hearing be held in Suffolk County where the indictment against petitioner is pending.
On June 2, 1976, Ardito and three codefendants were indicted by a Suffolk County Grand Jury on charges of first degree conspiracy, second degree murder, first degree kidnapping, and first degree robbery. On March 17, 1977, *1010 during the lengthy trial, the Suffolk County Court directed that Ardito be examined pursuant to CPL article 730. As a result of this examination, the court adjudicated Ardito incompetent to stand trial and ordered her committed to the Department of Mental Health on March 17, 1977.
Ardito was detained in Central Islip Psychiatric Center until February 28,1978 when she was transferred to South Beach Psychiatric Center in Richmond County. After reviewing psychiatric reports, the Suffolk County Court issued further orders of retention in September, 1979 and January, 1981. Ardito has already been hospitalized under her current criminal status for over four years. The January, 1981 order of retention was for a period not to exceed two additional years.
In Jackson v Indiana (supra, p 738), the United States Supreme Court held that “a person charged by a State with a criminal offense who is committed [to a State institution] solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant”.
The two basic issues before the court are: 1. whether a writ of habeas corpus is the proper form of action to obtain the relief sought by petitioner; and 2. whether the Jackson hearing should be held in Suffolk County, where the indictment is pending, or Richmond County, where petitioner is detained.
SCOPE OF HABEAS CORPUS RELIEF
At the outset, respondent asserts that the availability of a writ of habeas corpus is rigidly restricted to situations in which the relator seeks absolute release from detention. In support of this claim, respondent cites cases decided nearly half a century ago (see, e.g., People ex rel. Hauptmann v Hanley, 153 Misc 61). More recently, the Court of Appeals has stated that the narrow view of the grounds for habeas corpus relief has over the years undergone a subtle albeit *1011 steady change. (People ex rel. Keitt v McMann, 18 NY2d 257.)
In Keitt (supra), the court reversed the denial of the writ by the lower courts and held that habeas corpus may be used to inquire into the condition of a prisoner and whether his detention in a State hospital was lawful. Thus, habeas corpus was used to review the status of the appellant’s confinement, even though his incarceration as a convicted person was never attacked as being invalid.
The Court of Appeals has also termed it “quite obvious” that any restraint in excess of that permitted by constitutional guarantees should be subject to inquiry by means of habeas corpus. The relief granted may be other than absolute discharge (People ex rel. Brown v Johnston, 9 NY2d 482; see, also, Matter of Kaufman v Henderson, 64 AD2d 849; People ex rel. La Belle v Harriman, 35 AD2d 13; People ex rel. Meltsner v Follette, 32 AD2d 389).
The fact that Ardito is not seeking absolute release from detention does not function as a bar to her application for a writ of habeas corpus. In Jackson (supra), the United States Supreme Court held that indefinite commitment of a criminal defendant solely on account of his incapacity to stand trial constituted a denial of Fourteenth Amendment guarantees of due process and equal protection of the laws. Petitioner alleges that her continuing criminal detention for over four years is in excess of that permitted by constitutional guarantees.
Respondent also contends that the relief sought by petitioner is not within the scope of CPLR 7010 and therefore the application for habeas corpus is improper. CPLR 7010 states that the relator applying for habeas corpus may thereby obtain (a) discharge from the institution, (b) admission to bail, or (c) the relator may be remanded to the detention from which he was taken.
In essence, the question then is whether the term “discharge”, as it is used in the CPLR, comprehends conversion of criminal detention to civil status or whether it applies solely to absolute release from detention.
The use of the term “discharge” in CPLR 7010 (subd [a]) has not been judicially interpreted. However, the term is *1012 also used in CPLR 7004 (subd [c]). In Matter of Hogan v Culkin (18 NY2d 330), the Court of Appeals reversed the Appellate Division’s holding that CPLR 7004 (subd [c]) did not apply to a relator seeking resentencing rather than absolute release from detention. After reviewing the legislative history of this CPLR provision, the Court of Appeals stated (p 334) that “[ojbviously, then, the phrase, ‘A writ to secure the discharge of a person from a state institution’ was adopted merely as a generic description of habeas corpus in terms of its function”. Thus, the term “discharge” in CPLR 7004 (subd [c]) applies regardless of whether the relator seeks complete release from custody or only remand for resentencing.
Although CPLR 7004 (subd [c]) deals with the procedure to be followed after issuance of the writ, any relief encompassed by CPLR 7004 (subd [c]) must likewise be comprehended by CPLR 7010 (subd [a]) which defines the relief obtainable by writ of habeas corpus. This court therefore concludes that the term “discharge”, as it is used in CPLR 7004 (subd [c]) and 7010 (subd [a]) is merely a generic description of the function of habeas corpus.
In Jackson (supra), the United States Supreme Court held that it was a deprivation of equal protection of the laws to hold an indicted, incompetent person to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses. Although conversion of petitioner’s criminal commitment to civil status would not result in her physical release from custody, such conversion would grant petitioner substantive rights which are constitutionally guaranteed to her. The fundamental changes in detention encompassed by conversion of commitment status come within the scope of the term “discharge” as it is used in CPLR 7010 (subd [a]). One might even say that conversion is discharge from criminal status and the imposition of a new status, i.e., civil.
This interpretation conforms with the broader view of habeas corpus relief that has been recognized by the Court of Appeals (see People ex rel. Keitt v McMann, supra; People ex rel. Brown v Johnston, supra).
*1013 Another ground urged by respondent for the alleged impropriety of habeas corpus in the instant case is that it would shift the burden of proof from the State to the petitioner.
The burden of proof in a Jackson hearing is upon the People once the petitioner raises the initial question of his status (People v Arendes, 92 Misc 2d 372). Respondent claims, however, that the burden of proof would be upon the petitioner in a hearing under a writ.
If the petitioner were applying for habeas corpus to obtain complete release from custody, the burden would be upon the petitioner to prove her sanity (Matter of Lublin v Central Islip Psychiatric Center, 43 NY2d 341). But since petitioner here merely seeks conversion of her commitment status, the burden is upon the State to contest this conversion by proving that the petitioner will be competent to stand trial in the foreseeable future. In the absence of such proof by the State, Jackson (supra) mandates that the State either convert petitioner’s status or completely release her from detention.
In conclusion, habeas corpus relief is .not limited to situations in which the relator seeks complete release from custody; the term “discharge”, as it is used in CPLR 7004 (subd [c]) and 7010 (subd [a]), encompasses conversion of commitment status; and the use of habeas corpus does not shift the burden of proof in a Jackson hearing. It is therefore clear that habeas corpus is a proper procedural device to obtain a Jackson hearing in the instant case.
VENUE OF A HEARING OBTAINED UNDER WRIT OF HABEAS CORPUS
CPLR 7004 (subd [c]) provides that the writ “shall be made returnable before a justice of the supreme court or a county judge being or residing within the county in which the person is detained”. The Court of Appeals has held that the enactment of this CPLR provision, which superseded and paraphrased section 1239 of the Civil Practice Act “was not intended to alter the rule that habeas corpus hearings must be held in the county of detention when the relator is an inmate of a State institution” (Matter of Hogan v Culkin, supra, p 334).
*1014 Accordingly, the Jackson hearing is to be held in Richmond County, the county of detention, on September 14, 1981.