OPINION OF THE COURT
Budd G. Goodman, J.
In what appears to be a case of first impression, by motion dated January 25, 1988, the People have moved for an order requiring that Bellevue Hospital Center (Bellevue) provide them with 10 days’ notice prior to transferring or releasing defendant.[1] Defendant is presently confined there pursuant to a January 5, 1988 order of this court which granted his application for relief pursuant to Jackson v Indiana (406 US 715 [1972]) and ordered that he be committed there involuntarily as a civil psychiatric patient in accordance with the applicable provisions of article 9 of the Mental Hygiene Law. In his affirmation in support of this motion, the Assistant District Attorney indicates that such notice is sought because the People have, "an interest in monitoring defendant’s condition,” and because, "the People may seek to challenge a future finding by the hospital that the defendant is not a danger to himself or to others and may therefore be released.”
Defendant is charged by indictment with manslaughter, first degree. Pursuant to court orders he was examined to ascertain his competence to proceed. These examinations consisted of one-session evaluations by each of six psychiatrists designated by the New York City Commissioner of Mental Health, Mental Retardation and Alcoholism Services in accordance with CPL 730.20 (1) pursuant to three separate examination orders issued by this court, three one-session evaluations by a psychiatrist retained by the defense and an in-hospital longitudinal evaluation by a neurologist on the staff of Bellevue and by a clinical social worker appointed by this *754 court as independent experts.[2] Each of these mental health professionals opined that defendant was an incapacitated person as defined in CPL 730.10 (1), in that as a result of an organic mental syndrome — dementia[3] he was unable to appreciate the charges and proceedings against him and to assist counsel in his defense with a reasonable degree of rational understanding.
The People and defense counsel stipulated that defendant was not competent to proceed. The People moved for an order committing defendant pursuant to CPL 730.50. Defendant moved for relief pursuant to Jackson (supra), noting that because of the organic and irreversible nature of his incapacitating mental disease there was no, "substantial probability that he will attain that capacity [to proceed] in the foreseeable future” (supra, at 738). Defendant argued that, therefore, he should not be committed as an incapacitated person pursuant to the provisions of CPL 730.50 but, rather, he should either be committed in accordance with the applicable provisions of the Mental Hygiene Law or released. Defendant also moved pursuant to CPL 210.40 to dismiss the indictment in the interests of justice.
Jackson (supra, at 738) stands for the principle that, "a *755 person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.”
Noting that the reported New York State cases where Jackson relief has been considered[4] and then granted all appear to be instances where a defendant was committed pursuant to CPL 730.50 and had not made progress toward the goal of attaining competence to proceed while under such commitment, the People argued that Jackson relief is only appropriate once a defendant has been observed for an additional period of time after having been committed pursuant to CPL 730.50 and thereafter has failed to make progress toward the goal of attaining fitness to proceed.
This argument is without merit. In those very rare cases where it is clear from the outset that a defendant’s incapacity results from significant, chronic, irreversible organic brain dysfunction or significant, mental retardation for which there is no substantial probability of improvement that would result in recovery of competence to proceed, such a defendant’s commitment pursuant to CPL article 730 would not bear a reasonable relationship to the goal of such commitment, that of facilitating his attainment of competence to proceed, and would subject him to a more lenient commitment standard than that applied to similarly afflicted individuals against whom no criminal charges are pending. Therefore, in such extraordinary cases the requirements of due process and of equal protection of law demand the granting of Jackson relief at the time of the initial hearing held pursuant to CPL 730.30 *756 (3) and bar such defendants’ initial commitment pursuant to CPL 730.40 or 730.50.
A combined Jackson-Clayton, hearing was held before this court on December 16, 21 and 22 of 1987. Subsequently, the court found that as a result of an organic mental syndrome— dementia defendant was an incapacitated person and that even with extensive in-patient treatment there was no substantial probability that he would be able to attain fitness to proceed in the foreseeable future. Accordingly, the People’s application for the commitment of defendant as an incapacitated person pursuant to CPL 730.50 was denied. The court also denied defendant’s application for Clayton relief (CPL 210.40).
The testimony adduced at the hearing and the reports of the mental health experts who examined defendant made clear that because of his dementia he can act impulsively and might inadvertently harm himself or someone else, making it essential that he be placed in a residential setting where he can be closely supervised, on a 24-hour-a-day basis, lest he leave the facility without consent. Immediate placement for defendant in a health-related facility,[5] a type of residential health care facility for persons who do not require 24-hour-a-day skilled .nursing care but who, nevertheless, require 24-hour-a-day supervision and health-related services as defined in section 2801 of the Public Health Law, was not then readily available.
Accordingly, the court found that although defendant did not present a current substantial risk of physical harm to himself or others, he did require involuntary psychiatric hospitalization because he had a mental illness for which care and treatment as the inpatient of a hospital were essential to his welfare, that placement in a less restrictive setting in which he could be cared for and treated appropriately (in this case a health-related facility) was not then available and that as a result of his mental illness he was unable to appreciate the need for such care and treatment.
By order dated January 5, 1988, on the application of defense counsel whom this court had previously appointed as *757 guardian for this defendant, this court committed him to Bellevue and authorized his involuntary retention there as a civil patient for a period not to exceed 60 days in accordance with the applicable provisions of article 9 of the Mental Hygiene Law.
Turning to the People’s instant application, the Jackson court made it clear that the Fourteenth Amendment’s equal protection provisions preclude the application of a more lenient standard of commitment or a more stringent standard of release to an incapacitated defendant than would be applied to a mentally ill individual not charged with a crime. (Jackson v Indiana, 406 US 715, 729-730, supra.)
This court committed defendant pursuant to the applicable provisions of the Mental Hygiene Law. The treating professionals at Bellevue are free to discharge defendant in the prudent exercise of their professional judgment, as they would be in the case of any other mentally ill person involuntarily committed to or retained there pursuant to the Mental Hygiene Law. Under the procedures for retention applicable to involuntarily committed or retained mentally ill individuals set forth in Mental Hygiene Law § 9.33, the authority for applying for the continued retention of persons involuntarily committed to or retained in an in-patient psychiatric facility rests with the director of the institution.
To authorize the People to apply for defendant’s continued retention if the hospital seeks to release him or to compel the hospital to continue to hold him there involuntarily for an additional 10 days for the purpose of allowing them to make such an application once the hospital has determined that he should be released would subject defendant to a more stringent standard of release not applicable to other civilly committed patients and is impermissible.
The court notes that where a defendant is initially committed to the Commissioner of Mental Health pursuant to the provisions of CPL article 730 and continually retained thereafter, the subsequent granting of Jackson relief does not negate the requirement of CPL 730.60 (6) (a) -that the Commissioner of Mental Health provide four days’ notice prior to a change in defendant’s commitment status or level of supervision.[6]
*758 Notwithstanding the notice requirements of CPL 730.60 (6) (a), it is clear that provisions of CPL 730.60 (6) (c) which authorize the People, upon receipt of such notice, to seek a hearing to determine whether the committed individual presents a current danger to himself or to others and to seek his further involuntary retention are not applicable to situations where an individual is committed or retained pursuant to the Mental Hygiene Law rather than pursuant to the provisions of CPL 730.40 or 730.50. (See, People v Helfman, 91 AD2d 1034 [2d Dept 1983].)
It has been well settled that the granting of Jackson relief does not affect the pendency of the indictment. (See, Jackson v Indiana, supra, 406 US, at 740-741; People v Anonymous, 76 Misc 2d 884, 887; People ex. rel. Anonymous v Waugh, 76 Misc 2d 879, 883; Matter of Kesselbrenner v Anonymous, 75 Misc 2d 289, 291.) The proper mechanism to seek dismissal of an indictment against a defendant who has been granted Jackson relief is through a motion pursuant to CPL 210.40 to dismiss the indictment in the interests of justice. In this case, because defendant failed to present a compelling argument as to why the indictment should be dismissed in the interests of justice, this court denied his application for Clayton relief.
Because the indictment is still pending, the court[7] and the People[8] have an important interest in monitoring the *759 condition and location of the defendant. Additionally, because defendant is not competent to manage his own affairs or to make informed decisions as to his treatment, the court, defense counsel and the People are concerned that he is unable to act on his own behalf to assure that he receives appropriate care and treatment.
Mindful of these concerns, with the consent of defense counsel, at the time it committed defendant pursuant to the provisions of Mental Hygiene Law article 9, the court specifically requested the independent expert it appointed in this case, Hillel Bodek, M.S.W., C.S.W.,[9] to continue to monitor defendant’s progress and placement and to report back to this court, to the People and to defense counsel (his guardian) on a regular basis. Mr. Bodek agreed to monitor the care, treatment and condition of the defendant at his current placement in Bellevue and at whatever facility to which he is eventually transferred.
To assure that Mr. Bodek, and through him the court, defense counsel and' the People, may be notified rapidly of any significant change in defendant’s mental status or change of residence in a manner that does not violate his Fourteenth Amendment rights, the court now orders and directs that prior to defendant’s release or transfer from Bellevue Hospital Center and prior to his release or transfer from any other facility to which he may subsequently be transferred, the facility provide 10 days’ prior written and telephonic notice of such transfer, to the court-appointed expert and defendant’s court-designated personal representative, Hillel Bodek, M.S.W., C.S.W. It is further ordered he be notified immedi *760 ately if defendant elopes from the facility.[10] Of course, this is not meant to require prior notice in situation where transfer to another facility is required on an emergency basis. In such instance, immediate notice of such transfer shall be given to Mr. Bodek. [11]
The 10-day notice of any proposed discharge or transfer this court directs be provided to defendant’s representative is fully consistent with the regulations applicable to similarly situated patients of in-patient psychiatric and long-term health care facilities (skilled nursing facilities, health-related and other intermediate care facilities, and mental hospitals).[12] It assures that defendant, through his representative, is able to review the proposed discharge or transfer plan and respond to it in a responsible manner, a right that is guaranteed to other similarly situated individuals.
The steps taken by this court to assure that this incompetent defendant within its jurisdiction receives appropriate care and treatment also adequately meet the need of the court, of the People and of defense counsel to continue to remain apprised, to an extent that reflects appropriate diligence which can reasonably be accomplished, of defendant’s location and condition. These steps appropriately address the legitimate concerns of the People without violating any of defendant’s rights and without impinging upon the efforts to facilitate his placement in an appropriate supervised residential health care setting for persons suffering from dementia.
If at some future time the professionals at the facility where defendant is residing indicate that he has improved to such an extent that he should be released to a setting where he would be provided with a level of supervision less than that customarily provided to persons suffering from dementia who are residents of a health-related facility, this court will, upon the application of the People, order an updated assessment of him *761 pursuant to CPL article 730.[13] If he elopes from the facility where he is being cared for, upon application of the People, this court will issue a warrant for his arrest so that he may be brought back before this court, be reevaluated and then returned to an appropriate facility.
Mr. Bodek, as the court’s expert, is directed to maintain contact with the treating professionals at the facility where defendant resides and to file with the court and to provide to defense counsel and to the People a written report summarizing defendant’s care, treatment and condition on a once-every-three-month basis and to notify the court, defense counsel and the People as expeditiously as possible if he becomes aware of any significant change in defendant’s condition or of any change in his residence. In order to facilitate Mr. Bodek’s ability to carry out his duty as the court-designated personal representative of defendant, the facility where defendant resides shall afford Mr. Bodek full access to defendant and to the facility’s records relating to his care and treatment and shall permit him to confer, to the extent that he deems appropriate, with the staff assigned to defendant’s care, treatment and supervision.
[Portions of opinion omitted for purposes of publication.]

. Although the People’s motion seeks notice from Bellevue, where defendant is presently confined, they have indicated that they will seek future orders from this court requiring similar prior notice of discharge or transfer be provided by whatever hospital or other residential health care facility to which defendant is eventually transferred from Bellevue. Accordingly, the court will deal with the People’s present motion as requesting such relief.

. [1] Although CPL article 730 requires that a defendant be examined by two qualified psychiatrists or, in the case of a defendant alleged to be mentally retarded, by either 2 qualified psychiatrists or 1 qualified psychiatrist and 1 certified psychologist, the court or one of the parties may request the appointment of additional examiners. Clinical social workers and neurologists may be appointed as such additional examiners and may provide expert opinions as to a defendant’s competence to proceed and as to the prognosis for an incapacitated defendant to regain competence to proceed in the foreseeable future. The determination of competence to proceed is a judicial rather than a medical one and the court is not required to adopt the opinion of the psychiatric examiners designated by the director pursuant to CPL 730.20. (See, People v Gans, 119 Misc 2d 843 [Sup Ct, NY County 1983].)

. The American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders (3d ed rev 1987) indicates that the essential features of organic mental syndrome — dementia are, "impairment in short-term and long-term memory, associated with impairment of abstract thinking, impaired judgment, other disturbances of higher cortical functioning, or personality change. The disturbance is severe enough to interfere significantly with work or usual social activities or relationships with others * * * As in all Organic Mental Syndromes, an underlying causative organic factor is assumed * * * The mode of onset and the subsequent course of Dementia depend on the underlying etiology.” (Id., at 103-107.)
- In the instant case, the etiological factor was demonstrated to be chronic alcohol abuse which resulted in chronic and irreversible neurologic pathology leading to defendant’s development of dementia. This form of dementia is often referred to as "alcoholic dementia.”

. See, People ex rel. Ardito v Trujillo (109 Misc 2d 1009 [Sup Ct, Richmond County 1981]); People v Arendes (92 Misc 2d 372 [Sup Ct, Queens County 1977]); People v Arendes (86 Misc 2d 468 [Sup Ct, Queens County 1976]); People v Lee (83 Misc 2d 35 [Sup Ct, NY County 1975]); People v Anonymous (76 Misc 2d 884 [Sup Ct, NY County 1974]); People ex rel. Anonymous v Waugh (76 Misc 2d 879 [Sup Ct, NY County 1974]); Matter of Kesselbrenner v Anonymous (75 Misc 2d 289 [Sup Ct, NY County 1973]).

. The organization and administration of nursing homes and health-related facilities is regulated by 10 NYCRR parts 415 and 420, respectively. The delineation of patient/resident services to be provided in such facilities is set forth in 10 NYCRR parts 416 and 421, respectively. The operation of residential health care facilities in general is regulated by 10 NYCRR parts 730-734.

. It is noted that in this case defendant was not initially committed to the Commissioner of Mental Health as an incapacitated person pursuant to CPL 730.50. Rather, he was committed to Bellevue Hospital Center, the inpatient psychiatric facility serving his catchment area, a facility operated by *758 the New York City Health and Hospitals Corporation, as a civil psychiatric patient pursuant to the provisions of article 9 of the Mental Hygiene Law. Given these circumstances, there is a significant question as to whether, as the People contend, the notice requirements of CPL 730.60 (6) (a) apply here. However, the court need not address this issue because the order contained herein provides the People with a greater amount of notice than the four days provided under CPL 730.60 (6) (a). Further, if the court were to consider directing the Commissioner to comply with the provisions of CPL 730.60 (6) (a) under the circumstances of this case, the court would have to afford him a right to be heard before considering the entry of such an order.

. The court before which an indictment remains pending against a defendant to whom it has granted Jackson relief continues to have personal jurisdiction over the defendant and, as such, the right to remain apprised of defendant’s residence and availability to the court.

. [5] Generally, the period of time within which the People must bring a defendant to trial does not include a reasonable delay resulting from proceedings for the determination of competency and the period during which the defendant is incompetent to stand trial. Although this case, wherein defendant is charged with manslaughter, is not subject to speedy trial analysis pursuant to CPL 30.30, in the improbable situation that his condition changes and he attains competence to proceed, the People would still have the constitutional burden of using "due diligence” to locate *759 defendant and to proceed with the prosecution of the pending indictment in a timely manner.
Accordingly, in a case where an indictment is still pending against a defendant who has been granted Jackson relief the People have an important interest in being kept informed of defendant’s residence and condition. The court should take appropriate steps to enable the People to do so in a manner that does not violate such defendants’ Fourteenth Amendment rights or impact adversely on efforts to facilitate clinically appropriate placements for them. (Cf, People v Merrill, 123 Misc 2d 498 [Sup Ct, Bronx County 1984].)

. Mr. Bodek is a clinical social worker whose expert services in the clinical evaluation, treatment and arranging of appropriate services for multiple handicapped defendants (those who suffer from a combination of neurological/developmental disabilities and emotional disorders) are often called upon by the Judges of this court, the office of the District Attorney of New York County and the defense Bar in cases such as this to evaluate clinically and to facilitate appropriate disposition for such defendants. (See, People v Scala, 128 Misc 2d 831 [Sup Ct, NY County 1985].)

. This is consistent with the regulations of the Commissioners of Mental Health and Health relating to elopements and other hazardous or deviant behavior on the part of patients. (See, 14 NYCRR part 37; 10 NYCRR 415.3 [f]; 420.3 [e]; 730.6 [f].)

. See, 10 NYCRR 730.15 (e).

. See, Mental Hygiene Law § 29.15 (f), (g); 10 NYCRR 405.22, 405.25, 405.42 (g); 730.15 (e); 730.17 (a) (3), (4). See also, Yaretsky v Blum (592 F2d 65 [2d Cir 1979]); Yaretsky v Blum (629 F2d 817 [2d Cir 1980], revd on other grounds 457 US 991, 999-1002 [1982]); 42 USC § 1396a (a) (3); 45 CFR 205.10; Social Services Law § 22 (3) (a); (9)-(ll); 18 NYCRR 360.33, 358.8.

. Although not necessarily indicative of his attainment of competence to stand trial, such a level of improvement in defendant’s mental condition would constitute probable cause for this court to order an updated assessment of his competence to proceed. This examination could be accomplished without taking defendant into custody.