OPINION OF THE COURT
Juan M. Merchan, J.
By notice of motion dated August 12, 2011, Mary Beth Feerick, Esq., of counsel to Mental Hygiene Legal Service (hereinafter MHLS), moves on behalf of the defendant to preclude the New York County District Attorney’s Office from participating in defendant’s upcoming Jackson hearing. (Jackson v Indiana, 406 US 715 [1972].)
A Jackson hearing is scheduled to be held before this court upon the motion of the Office of the Attorney General, on behalf of the Commissioner of the New York State Office of Mental Health (hereinafter OMH) and the Director of Kirby Forensic Psychiatric Center, the facility where the defendant is currently criminally committed. In its motion, the Attorney General seeks to convert defendant’s commitment status from criminal, under article 730 of the Criminal Procedure Law, to civil, pursuant to article 9 of the Mental Hygiene Law. OMH contends that, pursuant to Jackson v Indiana (406 US 715, 738 [1972], supra), a change in defendant’s commitment status is required on constitutional equal protection and due process grounds, in that defendant’s treating psychiatrists have concluded that the likelihood of defendant achieving competency within the foreseeable future under any currently available treatments is minimal or nonexistent.
By affirmation and memorandum of law in opposition, dated September 15, 2011, the New York County District Attorney’s Office, by Assistant District Attorney Maureen T. O’Connor, Deputy Chief of the Special Litigation Bureau, opposes MHLS’s motion. Defendant’s criminal attorney, the Legal Aid Society, by affirmation dated August 19, 2011, joins in MHLS’s application to preclude the participation of the District Attorney. The Attorney General takes no position on MHLS’s motion.
In addition to the written submissions of the parties, this court heard oral argument on July 25, 2011.
Procedural History
On January 22, 2009, while defendant was a psychiatric patient at the Manhattan Psychiatric Center on Wards Island in New York County, it is alleged that she assaulted a staff member, *649 resulting in the pending indictment charging her with the felony offense of assault in the second degree.
Shortly after her indictment, the defendant was found unfit to proceed to trial pursuant to article 730 of the Criminal Procedure Law. An order of commitment was issued by the Honorable Daniel E Fitzgerald on February 27, 2009, committing her to the custody of OMH. On March 15, 2010, this court granted OMH’s request for an order of retention, pursuant to CPL 730.50 (2), which authorized defendant’s continued criminal commitment for a period not to exceed one year. On March 1, 2011, the Honorable Abraham L. Clott granted a further two-year order of retention. On April 12, 2011, during the pendency of the second order of retention, OMH filed for Jackson relief.
Positions of the Parties
MHLS maintains, that the District Attorney does not have standing to participate in a Jackson hearing. Although article 730 authorizes the District Attorney’s participation in initial competency hearings, MHLS argues that a criminal action is suspended once a court finds a defendant to be an incapacitated person, thereby discontinuing the involvement of the District Attorney unless and until the defendant is found fit by OMH.[1]
MHLS relies primarily upon People v Lebron (88 NY2d 891 [1996]), in which the Court of Appeals addressed the District Attorney’s speedy trial obligations as they pertain to defendants confined pursuant to article 730. Lebrón held that once a court issues an order finding a defendant to be an incapacitated person, the People have no obligation to independently monitor the defendant’s commitment status in order to exclude the period of commitment for CPL 30.30 (4) (a) trial readiness purposes.[2] MHLS points to Lebrón's language that a criminal action is “suspended” until a defendant is restored to fitness. (88 NY2d at 894-895.) MHLS likewise relies upon that portion of CPL 730.60 (2) which provides that
“[e]xcept as otherwise provided in subdivisions four and five, when a defendant is in the custody of the *650 commissioner pursuant to a temporary order of observation or an order of commitment or an order of retention, the criminal action pending against the defendant in the court that issued such order is suspended until the superintendent of the institution in which the defendant is confined determines that he is no longer an incapacitated person.”
Additionally, although acknowledging that New York has never codified the procedures to be followed at a Jackson hearing, MHLS asserts that CPL 730.60 (6), which was added to article 730 in 1980, evidences a legislative intent to exclude the District Attorney from Jackson hearings. MHLS contends that subdivision (6) sets forth the District Attorney’s sole participation rights relative to a defendant’s commitment status, subsequent to an initial finding of incapacity to proceed to trial, unless and until OMH declares a defendant fit. (CPL 730.60 [6] [a], [c].)[3]
*651 MHLS theorizes that after a Jackson hearing is conducted, relief is granted, and the People receive notice of the impending change in commitment status pursuant to CPL 730.60 (6) (a), the sole right of the prosecutor is to seek a hearing pursuant to CPL 730.60 (6) (c), if, and only if, the People contend that the now civilly committed defendant is a danger to herself or others. Only at that point are the People entitled to defendant’s clinical records and the right to be heard. According to MHLS,
“[t]he fact that the statute provides an express mechanism for the involvement of the D.A. after Jackson relief has been granted, but does not include any mechanism for the D.A.’s involvement in the medical determination of capacity, is a strong indicator that the D.A. is not intended to be a participant in a Jackson hearing.” (MHLS Aug. 15, 2011 affirmation at 5, If 13.)
The District Attorney counters that MHLS misinterprets the Court of Appeals decision in People v Lebron (88 NY2d 891 [1996], supra) and inappropriately attempts to expand its holding to apply to the legal issue now before this court. The People maintain that Lebrón merely decided the narrow question of whether the District Attorney has a due diligence obligation under CPL 30.30 to monitor a defendant’s whereabouts once an article 730 commitment order has been issued by a court. The People further argue that Lebrón does not address, nor negate, their interest and right to participate in a Jackson proceeding involving a change in a defendant’s commitment status.
The People cite to People v Schaffer (86 NY2d 460 [1995]) in support of their position. In Schaffer, the Court of Appeals held that dismissals in the interest of justice (People v Clayton, 41 AD2d 204 [2d Dept 1973]) are not available to defendants committed under article 730. The Court of Appeals noted that because the trial court had granted the Clayton motion to dismiss, it had not ruled on Mr. Schaffer’s alternative request for Jackson relief, an issue which had in fact been litigated at *652 the same time as the Clayton motion, with the participation of the District Attorney. In discussing the unresolved Jackson motion, the Schaffer Court indicated that
“[s]hould the trial court determine that there is no substantial probability that defendant will attain the capacity to understand the proceedings against him or to assist his attorneys in the foreseeable future — an issue the People contest — the defendant will be entitled to either be released or civilly committed as set forth above.” (86 NY2d at 469.)
Thus, the People maintain, the Court of Appeals has implicitly recognized the District Attorney as a rightful participant in a Jackson hearing.
Further, the People assert that CPL 730.60 (4) and (5), which expressly provide for certain legal proceedings to continue despite a defendant’s legal incapacity, demonstrate the legislature’s recognition that the District Attorney continues to play a significant role in legal matters relating to an incapacitated defendant, despite the suspension of their obligation to bring the case to trial.[4]
CPL 730.60 (5), which involves the participation of the District Attorney, authorizes a court to consider a motion for dismissal of a criminal action, in a manner more stringent than a Clayton dismissal under CPL 210.40. Most notably, CPL 730.60 (5) requires the express consent of the District Attorney. The People argue that this requirement demonstrates further recognition by the legislature of the District Attorney’s continuing involvement in proceedings seeking changes in the conditions of confinement of a defendant who remains unfit, but for whom continued criminal confinement and prosecution may no longer be in the best interests of society.
Conclusions of Law
In Jackson v Indiana (406 US 715, 738 [1972]), the Supreme Court held that a person charged by a state with a criminal offense and committed to custody solely , on account of his or her incapacity to proceed to trial may not be held for more than a reasonable amount of time necessary to determine if there exists a substantial probability that he or she will attain capacity *653 to proceed in the foreseeable future. Jackson relief is grounded in constitutional principles of equal protection and due process of law. Once a court determines that a substantial probability does not exist that a defendant will attain the capacity to stand trial, the state must either initiate civil commitment proceedings in the same manner as it would to commit any other citizen, or release the defendant. (People v Schaffer, 86 NY2d 460, 469 [1995].)
The Supreme Court reasoned that this redress was necessary to protect the liberty interests of those mentally ill persons held in criminal confinement, accused of crimes but convicted of no offense, yet unable to be brought to trial by the state due to their incapacity. Some incapacitated defendants languished indefinitely in penal institutions, at times beyond the maximum permissible term of incarceration. The Supreme Court concluded that due process requires the nature and duration of commitment to bear some reasonable relation to the purpose for which the individual was committed, specifically in the case of a criminal commitment, for the achievement of fitness to proceed to trial.
Jackson relief exists parallel to, but is not a part of, article 730 proceedings. When Jackson became law in 1972, New York did not amend article 730 to address Jackson hearings, nor did it create any new statutory scheme to set forth the procedural mechanisms for Jackson relief. Instead, Jackson relief is sought by established procedural mechanisms, outside the express provisions of article 730. (See e.g. People ex rel. Ardito v Trujillo, 109 Misc 2d 1009 [Sup Ct, Richmond County 1981] [a habeas corpus proceeding brought by defendant for Jackson relief; District Attorney participated at hearing]; People v Merrill, 123 Misc 2d 498 [Sup Ct, Bronx County 1984] [defendant obtained Jackson relief by way of writ of habeas corpus; the People did not oppose defendant’s application].)
Three decades after Jackson, in People v Lewis (95 NY2d 539 [2000]), the Court of Appeals made clear that Jackson hearings are separate from article 730 proceedings. “CPL article 730 and Jackson v Indiana provide alternative ways for a criminal defendant to be converted from criminal to civil status.” (Id. at 545 [emphasis added].) CPL 730.70, which sets forth the right of the Commissioner of the Office of Mental Health to seek civil commitment under the provisions of the Mental Hygiene Law, comes into play only after criminal proceedings have terminated. Thus, CPL 730.70 has no applicability to a defendant held under an article 730 order of commitment which has not yet expired.
*654 Furthermore, the purpose of article 730 proceedings differs from that of Jackson proceedings. The Court of Appeals in People v Phillips (16 NY3d 510 [2011]) reiterated that
“[t]he key inquiry in determining whether a criminal defendant is fit for trial is ‘whether he [or she] has sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding — and whether he [or she] has a rational as well as factual understanding of the proceedings against him [or her]’ (Dusky v United States, 362 US 402, 402 [I960]).” {Id. at 516 [emphasis added].)
Jackson, on the other hand, is prospective, its goal being to ascertain whether a defendant is likely to regain legal fitness in order to support continued penal incarceration.
CPL 730.60 (6), which provides notice requirements prior to any change in the conditions of a defendant’s commitment, was not added to article 730 until 1980, eight years after Jackson v Indiana was decided. A review of the legislative history to the 1980 amendments makes clear its enactment was unrelated to Jackson v Indiana. The 1980 amendments were drafted in response to a public outcry that arose after a treating psychiatrist at Pilgrim Psychiatric Center in Brentwood, Long Island, gave a one-day pass to a committed defendant named Adam Berwid without notification to the assistant district attorney, the police, or the defendant’s former wife, the complainant in the underlying criminal action, whom Mr. Berwid had repeatedly threatened to kill should he get out of jail. Tragically, Mr. Berwid stabbed his estranged wife to death only hours after being released from his commitment. (See Carpenter, Murder on a Day Pass, Village Voice, Feb. 25, 1980.) Legislative hearings followed in the wake of the public furor. The legislature’s memorandum in support of the 1980 amendment to article 730 focused on correcting the absence of notice requirements before the Commissioner could furlough or grant temporary passes to persons committed to their custody under the Criminal Procedure Law, including situations where defendants in their custody faced unresolved violent felony charges.
“Committed persons with violent backgrounds have been furloughed or temporarily released without notice to anyone. This has created situations where these individuals have brutally, often fatally, attacked innocent victims. Such a case was the recent Berwid incident. This bill provides notice provisions *655 upon the furlough, temporary release or transfer to a less secure facility of a patient committed under the [C]riminal Procedure Law. It provides a necessary measure of public safety with regard to the treatment of committed persons.” (See Mem of Assemblyman Paul E. Harenberg, 1980 NY Legis Ann, at 220.)
CPL 730.60 (6) was created to address these concerns. (See Governor’s Mem approving L 1980, ch 549, 1980 McKinney’s Session Laws of NY, at 1881.) The amendment provided for notice to the District Attorney, police agencies, as well as the victims of the alleged violent felonies, among others, before the Commissioner may grant passes, furloughs, temporary release or transfers to less secure facilities. Further, the District Attorney was afforded a mechanism to seek a court order enjoining any change in the conditions of a defendant’s criminal commitment upon a showing that the criminally committed defendant is dangerous to himself/herself or others. Thus, it is clear tp this court that the provisions of CPL 730.60 (6) were not intended to address the parties, procedures, rights and duties involved in Jackson hearings but, rather, were intended to create a new notice giving requirement.
This conclusion is supported by the express provisions in both CPL 730.60 (6) (b) and (d), that “[njothing in this subdivision shall be construed to impair any other right or duty regarding any notice or hearing contained in any other provision of law.” Jackson is just such a proceeding, a constitutionally mandated hearing, providing an opportunity for a defendant to seek transfer to civil confinement.
This court finds that the District Attorney is a rightful party to a Jackson hearing. The District Attorney’s involvement is integrated throughout the provisions of article 730. It defies reason that the District Attorney, having the right to demand an initial hearing on the question of a defendant’s fitness to proceed, even in the face of concurring conclusions on the fitness question by both medical examiners (CPL 730.30 [2], [3]); and having the right to examine a defendant’s medical records, cross-examine witnesses and present its own evidence on the issue of competency at such a hearing; and who, at the initial hearing, has the burden of proof, by a preponderance of the evidence, on a defendant’s fitness to proceed (People v Santos, 43 AD2d 73, 75 [2d Dept 1973]); would subsequently be barred from participation at a Jackson hearing, conducted solely to *656 determine whether the same defendant is likely to regain legal capacity in the foreseeable future. Clearly, the District Attorney’s same interests on behalf of the People of the State of New York continue at a corollary Jackson proceeding which could alter the defendant’s extant article 730 status.[5]
MHLS’s argument that the legislature intended the District Attorney’s participation to be relegated to the dangerousness exception of subdivision (6) (c) of CPL 730.60 subsequent to a defendant’s initial criminal commitment, without any right to participate in a Jackson hearing, is belied by appellate case law. In People v Helfman (91 AD2d 1034 [2d Dept 1983]), the Appellate Division expressly held that the District Attorney is not entitled to a hearing under subdivision (6) (c) where a defendant is no longer being held under an article 730 criminal commitment order. In People v McArthur (118 Misc 2d 665 [Sup Ct, Queens County 1983]), the court, relying upon the express language of Helfman, found that once a defendant has obtained Jackson status, the District Attorney has no standing to challenge the conditions of the defendant’s civil commitment under CPL 730.60 (6) (c). (Accord People v Villanueva, 139 Misc 2d 751, 758 [Sup Ct, NY County 1988].) Therefore, once a court grants Jackson relief, the defendant is no longer criminally committed and thereafter must be treated in the same manner as all other persons who are civilly confined. It is OMH, governed by the provisions of article 9 of the Mental Health Law, which thereafter determines whether a defendant may be released to the community for any period of time, taking into account the danger, if any, posed by the defendant to himself/ herself or others. (People v Merrill, 123 Misc 2d 498 [Sup Ct, Bronx County 1984].)[6]
*657 The District Attorney retains a significant interest in any change in an accused’s confinement, whether under article 730 or by way of Jackson, because both proceedings involve not only medical, but also legal, determinations affecting the future of the criminal action. As noted in People v Phillips (16 NY3d at 517), “[a] finding of trial competency is within the sound discretion of the trial court and involves ‘a legal and not a medical determination’ (People v Mendez, 1 NY3d 15, 20 [2003]).” Phillips noted that a judge’s determination of legal competency is not limited to medical reports or medical testimony, but includes such factors as how the defendant interacts with the court, how he or she communicates with counsel, and how he or she physically reacts to a question or piece of testimony. (Id.)
The provisions of article 730 itself support this determination. As previously indicated, if the initial examination reports of both psychiatric examiners are of the opinion that a defendant is an incapacitated person, such opinions will not result in a court finding of unfitness and a criminal commitment order, if the District Attorney objects and requests a hearing. (CPL 730.30 [3].) Were the conclusions of psychiatrists alone determinative on the question of legal fitness, the People would not have the automatic right to participate in such a hearing. Instead, even if the face of concurring medical findings, the District Attorney retains the right to oppose OMH’s conclusion that a defendant is unfit.
Additionally, should OMH thereafter seek a change in the status of a defendant’s commitment, being of the opinion that the defendant is no longer incapacitated, both the court and the District Attorney must be notified, in writing, and, once again a court must hold a hearing upon motion by the District Attorney or the defendant. (CPL 730.30 [2]; 730.60 [2].) The only time notice to the District Attorney is not expressly set forth in article 730 is when OMH seeks no change in a defendant’s commitment status, instead applying for an order to retain the defendant in his or her current status. (CPL 730.50 [2].) However, *658 any effort to affirmatively change defendant’s commitment status results in a duty to notify the District Attorney and provides for an opportunity for the People to be heard.
MHLS’s argument that People v Lebron (88 NY2d 891 [1996], supra) stands for the proposition that the criminal commitment of a defendant suspends the District Attorney’s participation rights at a Jackson hearing misreads the decision. Lebrón addressed the question of whether the People have an affirmative duty to remain apprised of the status of a criminally committed defendant in order to receive a speedy trial exclusion under CPL 30.30 (4) (a). Lebrón held the People were entitled to rely on the court’s commitment order and did not have an affirmative duty to monitor the defendant’s commitment status. Accordingly, the time period of the commitment order was excluded for trial readiness purposes, despite the fact that, unbeknownst to the parties, the defendant in Lebrón had not actually been committed but instead had been incarcerated in a penal institution on an unrelated felony conviction. MHLS’s attempt to expand Lebrón to encompass its proposition that the District Attorney has no standing in a Jackson proceeding is an unsupportable extension of the Lebrón Court’s limited holding and a misconstruction of its dicta. Lebrón dealt only with the question of the People’s duty to bring a case to trial in a timely fashion. It has no application to the District Attorney’s right to partid-, pate in fitness proceedings and does not refer in any manner specifically to Jackson proceedings. People v Schaffer (86 NY2d 460 [1995], supra), on the other hand, decided only one year prior to Lebrón, acknowledged the District Attorney’s participation in the underlying Jackson hearing and noted the People’s opposition to the motion for Jackson relief.
In sum, a Jackson hearing involves a change in commitment status outside the four corners of article 730 of the Criminal Procedure Law. The District Attorney has a right to participate in that Jackson hearing, having a significant interest in any modification to the commitment status of a person against whom a criminal indictment remains pending. The Attorney General, counsel to OMH and its medical facilities, has no direct involvement in, or responsibility for, the prosecution of the criminal action and cannot stand in the shoes of the District Attorney at a Jackson hearing.
*659 Conclusion
MHLS’s motion to preclude the participation of the District Attorney at defendant’s Jackson hearing is denied.

. Pursuant to CPL 730.10 (1) “ ‘[i]ncapacitated person’ means a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense.”

. CPL 30.30 (4) (a) excludes from the time in which the District Attorney must be ready for trial “a reasonable period of delay resulting from other proceedings concerning the defendant, including but not limited to: proceedings for the determination of competency and the period during which defendant is incompetent to stand trial.”

. CPL 730.60 (6) (a) reads as follows:
“Notwithstanding any other provision of law, no person committed to the custody of the commissioner pursuant to this article, or continuously thereafter retained in such custody, shall be discharged, released on condition or placed in any less secure facility or on any less restrictive status, including, but not limited to vacations, furloughs and temporary passes, unless the commissioner shall deliver written notice, . . . to all of the following:
“(1) The district attorney of the county from which such person was committed;
“(2) The superintendent of state police;
“(3) The sheriff of the county where the facility is located;
“(4) The police department having jurisdiction of the area where the facility is located;
“(5) Any person who may reasonably be expected to be the victim of any assault or any violent felony offense, as defined in the penal law, which would be carried out by the committed person; and
“(6) Any other person the court may designate.
“Such notice may be given by any means reasonably calculated to give prompt actual notice.”
CPL 730.60 (6) (c) reads as follows:
“Whenever a district attorney has received the notice described in this subdivision, and the defendant is in the custody of the commissioner pursuant to a final order of observation or an order of commitment, he may apply within three days of receipt of such notice to a superior court, for an order directing a hearing to be held to determine whether such committed person is a danger to himself or others. Such hearing shall be held within ten days following the issuance of such order. Such order may *651 provide that there shall be no further change in the committed person’s facility or status until the hearing. Upon a finding that the committed person is a danger to himself or others, the court shall issue an order to the commissioner authorizing retention of the committed person in the status existing at the time notice was given hereunder, for a specified period, not to exceed six months. The district attorney and the committed person’s attorney shall be entitled to the committed person’s clinical records in the commissioner’s custody, upon the issuance of an order directing a hearing to be held.”

. For example, pursuant to CPL 730.60 (4), legal proceedings such as a motion to dismiss an indictment as legally insufficient, or a motion addressed to a question of jurisdiction, can be raised during defendant’s incapacity, and the District Attorney would participate in those proceedings.

. For example, at a Jackson hearing, the People may seek to establish by medical or other expert testimony that, inter alia, new treatments exist for defendant’s condition that have not yet been tried; that signs of progress exist; or that there are indications the defendant is malingering.

. Belatedly, it has been held that Jackson relief cannot be forced upon a defendant who wishes to remain under criminal commitment in order to receive credit toward a potential sentence, should he or she regain fitness and thereafter be tried and convicted. In People v Lewis (95 NY2d 539 [2000]), the Court of Appeals held that by obtaining Jackson relief, a defendant exchanges his statutory article 730 rights for the less stringent standards of confinement and release afforded to defendants held under civil commitment. As a consequence, a person converted to civil status pursuant to Jackson cannot obtain a dismissal of a pending indictment under CPL 730.50 (3) upon a claim that he has served two thirds of the authorized maximum sentence. “Incidental to the *657 exercise of his rights under Jackson v Indiana, this defendant brought himself outside the four corners of CPL article 730 and, thus, was no longer entitled to avail himself of CPL 730.50’s dismissal provisions, a prospective benefit that existed before he invoked his rights under Jackson.” (Id. at 549.) In People v Miliokov (18 Misc 3d 816 [Sup Ct, Kings County 2008]), the court reasoned that Jackson relief, grounded in a defendant’s liberty interest, is the defendant’s right to assert. Thus, Miliokov held that a defendant may not be converted to civil commitment status, over his objection, while subject to an open indictment.