OPINION OF THE COURT
Budd G. Goodman, J.
The Director of the Assigned Counsel Plan of the City of New York (hereinafter referred to as the Director) has returned to this court for reconsideration two vouchers previously approved by this court for compensation for expert services rendered in two cases in which this court appointed Hillel Bodek, M.S.W., C.S.W. to provide forensic clinical social work services pursuant to County Law § 722-c. In support of this application, the Director attached a copy of Administrative Order 73/92 of the Chief Administrator of the Courts dated February 6, 1992 (hereinafter referred to as AO 73/92), and a document entitled Fee Guidelines for Expert Witnesses Under County Law 722-c that was prepared by the Assigned Counsel Plan (hereinafter referred to as AGP Fee Guidelines).
When Mr. Bodek submitted these vouchers this court carefully reviewed them. This court approved them and directed that they be paid, in full, as submitted, in the amounts of $5,200 and $200, respectively, at the rate of $100 per hour. The Court Clerk then transmitted these approved vouchers to the Director for processing and payment. The Director now seeks reconsideration.[1]
The Director’s June 4, 1993, written application to this court, which mirrors her oral application of May 28, 1993, states,
"I have enclosed two vouchers submitted to the Assigned Counsel Plan by Hillel Bodek. The hourly billing rate recommended by the Chief Administrator of the Courts for certified social workers is $45 an hour. I have enclosed a copy of the Order issued by the former Chief Administrator and a letter from the Assigned Counsel Plan endorsing that rate.
"In light of these fee guidelines, the severe budget constraints that New York City labors under, and the fact that an attorney in a criminal case is limited to $40 an hour for in-court services, we would greatly appreciate it if the Court would reconsider the authorization of $100 an hour, and apply the $45 an hour rate.”
*111 LEGAL FRAMEWORK
The vouchers in question were not, as the Director asserts, submitted by Mr. Bodek to the Assigned Counsel Plan. Rather, pursuant to the statute, they were submitted to this court, for its review, consideration and approval. County Law § 722-c provides, in pertinent part, ”[t]he court shall determine reasonable compensation for the services and direct payment to the person who rendered them or to the person entitled to reimbursement” (emphasis added). Thus, it is the court that had appointed the expert that is required to make an independent judicial determination of the "reasonable compensation” for his expert services; and the court must then direct that the county, in this case the City of New York, pay this "reasonable compensation” to the expert who provided the services or to such other person entitled to that compensation.
The Director relies on AO 73/92 for authority to impose specific hourly rates as the reasonable rates for certain experts. Indeed, the Assigned Counsel Plan has endorsed those rates in the AGP Fee Guidelines. Although AO 73/92 is styled as an administrative order, a review of the document indicates that it is merely a guideline. Assuming, arguendo, as the Director appears to suggest, that it is a regulation or administrative rule, it would not be enforceable as such because it would be in derogation of the statute and impermissible intrusion by an administrative agency into the independence of Judges in making what are clearly judicial determinations. (See, People v Little, NYLJ, Apr. 21, 1982, at 26, col 1 [Sup Ct, NY County 1982].)
The language of section 722-c is clear and unambiguous. The determination of "reasonable compensation” for an expert appointed in accordance with section 722-c, which includes setting the hourly rate for the expert, deciding the total to be paid and ruling whether "extraordinary circumstances” exist in the case that permit a total payment to the expert in excess of the statutory maximum of $300, is a judicial determination to be made by the Judge assigning the expert.[2] There is no statutory authority for promulgation of any regulation or *112 administrative rule which would control the judicial determination by Judges of "reasonable compensation” under section 722-c. The Legislature has clearly vested solely in the Judge assigning the expert in question the authority to make this determination. (See, Matter of Montgomery v Muller, 176 AD2d 29 [3d Dept 1992]; Matter of Kindlon v County of Rensselaer, 158 AD2d 178, supra; Matter of Byrnes v County of Monroe, 128 Misc 2d 700, supra, affd 131 Misc 2d 129, revd on other grounds 122 AD2d 549, affd on appeal of further proceedings below 129 AD2d 229.) These judicial determinations by trial courts are not reviewable either by appeal or by proceeding pursuant to CPLR article 78. (See, Matter of Werfel v Agresta, 36 NY2d 624 [1975];[3] Matter of Montgomery v Muller, *113 176 AD2d 29, supra; Matter of Fisher v Schenck, 39 AD2d 813 [3d Dept 1972].)
In contrast to the role of Judges in making judicial determinations of the "reasonable compensation” of experts and directing payment of such compensation, the function of the Director is a ministerial one, to wit: to process the judicially approved vouchers so that they are paid by the City in a timely and efficient manner.[4]
REASONABLENESS OF THE HOURLY RATE
The Director does not directly contest the reasonableness of the $100 per hour rate requested by Mr. Bodek and approved by this court. Rather, she requests that this court modify the hourly rate from $100 to $45. She provides three bases for her request. First, the rate approved by this court exceeds the rate for certified social work services suggested in AO 73/92 and in the ACP Fee Guidelines; second, the fees for attorneys under the Assigned Counsel Plan are only $40 per hour for in-court time and $25 per hour for out-of-court time; and, third, New York City labors under severe budget constraints. The court will now proceed to address these three contentions, seriatim.

Administrative Order 73/92 and Assigned Counsel Plan Fee Guidelines

AO 73/92 suggests that the reasonable hourly rates for certain experts are, "psychiatrists, $125; certified psychologists, $90, physicians, $200; certified social workers, $45; and, licensed investigators, $32.” The ACP Fee Guidelines also adopt these suggested rates and rates for other types of *114 experts not enumerated in AO 73/92.[5] The Director apparently contends that since these guidelines were adopted by the Chief Administrator of the Courts, they should be accepted as establishing the reasonable rates for compensation.
An inherent problem with these guidelines as they pertain to certified social workers is that they obliterate New York State’s statutory scheme which has established three levels of certified social workers: (1) ordinary certified social worker: a person who has earned a Master’s degree in social work and has passed the New York’s licensing examination entitling him or her to licensure as a certified social worker pursuant to article 154 of the Education Law; (2) certified social worker who has earned the "P” endorsement on his or her license: a person having met the requirement, inter alia, of three years of full-time, post-graduate, supervised experience in providing psychotherapy services (L 1977, ch 893, enacting Insurance Law § 3221 [l] [4] [A]; § 4303 [i]; 8 NYCRR 74.5 [c]) and (3) certified social worker who has earned the "R” endorsement on his or her license: a person having met the requirement, inter alia, of six years of full-time, post-graduate, supervised experience in providing psychotherapy services (L 1984, ch 990, enacting Insurance Law § 3221 [l] [4] [D]; § 4303 [n]; 8 NYCRR 74.5 [d]). Group medical insurance plans are mandated to provide coverage for services to diagnose and treat mental and nervous disorders when provided by this level of certified social worker. This coverage is required to be on par with the coverage such plans afford for like clinical services when provided by a psychologist or psychiatrist.
A second and closely related problem with these guidelines is that they fail to distinguish between certified social workers in general and those who specialize in clinical social work[6] in *115 particular. This would be analogous to equating the credentials of a merely licensed physician with one who is, in addition, board certified in a medical specialty, an accomplishment entailing post-graduate education, experience, supervision and examination. Increasingly, State and Federal statutes, particularly multi-level licensing statutes[7] and medical insurance reimbursement,[8] distinguish between social workers *116 and clinical social workers and between psychologists and clinical psychologists.
The social work profession has developed specialty board certification in clinical social work, analogous to board certification of licensed physicians by the specialty boards in the medical profession, such as the American Board of Psychiatry and Neurology, Inc., and to specialty board certification of licensed psychologists by the American Board of Professional Psychology. Commencing in 1987, the American Board of Examiners in Clinical Social Work, Inc. has offered board certification in clinical social work to masters and doctoral level social workers. These must meet certain requirements of graduate education in clinical social work and post-graduate clinical experience and supervision; they must be licensed in the State where they practice and must obtain a passing score on the qualifying examination for board certification. A social worker who meets these requirements is awarded certification as a Board Certified Diplomate in Clinical Social Work. In order to maintain such board certification, a clinical social worker must complete 20 hours annually of continuing professional education. (American Board of Examiners in Clinical Social Work — 1993 Diplómate Directory [Am Bd of Examiners in Clinical Social Work, Inc., 1992, at iii-vi, insert].)
Thus, the clear public policy of New York State recognizes three separate levels of certified social workers. Similarly, the public policy of the United States and of a number of other States distinguishes between social workers and clinical social workers. The national standards of the social work profession recognize clinical social workers as social workers with advanced training, knowledge and skills in the specialty of clinical social work within the larger profession of social work. Although AO 73/92 and the AGP Fee Guidelines ignore this reality, this court would be remiss if it were to do likewise when setting "reasonable compensation” for a certified social worker. Fundamental fairness requires that "reasonable compensation” for an expert should recognize, in addition to other *117 factors that relate to the actual expert services, the nature of the expert’s knowledge, skills and expertise. Thus, it would be manifestly unjust to group all certified social workers together when making a determination of the hourly rate for "reasonable compensation” for a certified social worker.
Having determined that the establishment of a reasonable rate for compensation of certified social worker services pursuant to section 722-c requires a multi-level approach, with a determination of reasonable rates for certified social workers at each of at least three levels (certified social worker, certified social worker with a "P” endorsement on the license, and certified social worker with an "R” endorsement on the license), if not four (the previous three plus the level of a certified social worker with an "R” endorsement on the license and board certification in clinical social work),[9] the court must proceed to determine the reasonable rate for certified social workers at each of these levels.
Psychotherapy Finances, a monthly periodical devoted to economic issues in mental health practice, conducts an annual fee and practice survey. Data from the 1992 survey indicates that social worker fees for individual psychotherapy sessions in the United States had a median of $75, and a mean of $76. In the Northeastern region of the United States, social worker fees for individual psychotherapy sessions had a mean and median of $75, with 33% of all social workers in the region charging between $80 and $100 per individual session and 23% charging between $80 and $90 per individual session.[10] This survey groups all social workers together, regardless of years of training and experience, level of licensure and board certification. (17 [No. 12] Psychotherapy Finances [1992].)
A recent survey by the National Association of Social Workers found that private practice fees for social workers in the United States ranged from $20 to $105 per session, with an average of $77.73 per session.[11] This figure does not take into *118 account the region or local demographics of the place where the services were provided, nor the educational level, licensure and/or certification level or years of experience of the practitioner. (See, 39 [No. 5] NASW News, at 5 [May 1993].)
Fee data more specific to New York State was obtained from the New York State Society for Clinical Social Work, Inc. The information it provided indicates that the average cost for an individual psychotherapy session[12] provided by a clinical social worker in the New York City Metropolitan Region depends on the level of the social worker’s training and experience. For beginning M.S.W. level social workers who have obtained their C.S.W. (State license as a certified social worker) and have less than three years of full-time post-graduate experience, the average fee is $45 per session, with a range of $40 to $55 per session. For certified social workers with the "P” endorsement on their license, the average fee is $60 per session, with a range of $50 to $70 per session. For certified social workers with the "R” endorsement on their license, the average fee is $75 per session, with a range of $65 to $85 per session. For certified social workers with the "R” who are also board certified diplomates in clinical social work, the average fee is $85 per session, with a range of $75 to $100 per session. It notéd that these fees are somewhat lower in rural areas and small towns upstate. The Society also remarked that many clinical social workers see some patients who are referred to them by managed care firms pursuant to contract whereby they render treatment for an agreed upon rate ranging from $40 to $90 per individual therapy session, the average being $72 to be charged by a certified social worker who has the "R” endorsement on his or her license. (Letter of the New York State Society for Clinical Social Work, Inc. to this court [June 1, 1993].)
The fee data from these three separate and independent sources all support a finding that an hourly rate[13] of $100 is in keeping with the average fees for certified social workers with the "R” endorsement on their license, and that an hourly rate of $115 is in keeping with the average fees for certified social workers with the "R” endorsement on their license who are *119 also board certified in clinical social work. Such fees constitute a reasonable rate for compensation of such social workers under section 722-c.
This court notes with serious concern that both the Chief Administrator of the Courts and the Director of the Assigned Counsel Plan have, however unintentionally, published fee guidelines which treat certified social workers as second class mental health practitioners and psychiatrists as second class physicians. Those guidelines set forth a rate for psychiatrists that is 63% of the rate set forth for all other physicians and a rate for certified social workers that is 50% of the rate set forth for psychologists and only 36% of the rate set forth for psychiatrists.
As my learned colleague, Judge Stephen G. Crane, noted in People v Scala (128 Misc 2d 831, 842 [Sup Ct, NY County 1985]), "Clinical social workers, who provide the majority of psychotherapeutic services rendered in the United States * * * are particularly suited to be of assistance to the courts in resolving clinical-legal issues and in facilitating the effective administration of individualized justice in cases where issues relating to psychosocial dysfunction and mental disorders are involved.” The Scala court went on to note, "[elective mental health intervention often enables the criminal justice system to dispense effectively the individualized justice set forth as an ideal in People v Selikoff (35 NY2d 227, 233-234 [1974]). To be effective, such mental health intervention requires a combination of clinical skills and ability to negotiate social systems. This combination is unique to clinical social work among the various mental health professions.” (Supra, at 842, n 14.)
The social work profession has established high standards for the practice of forensic clinical social work which this court cited as authoritative in People v Fratt (146 Misc 2d 77, 89, n 9 [Sup Ct, NY County 1989]). The New York State Society for Clinical Social Work, Inc. has been proactive in its efforts to encourage and ensure the provision of quality clinical social work services in forensic settings. For instance, the Society conducts a two-year fellowship training program in forensic clinical social work for qualified clinical social workers, the only one of its kind in the country, to prepare them to apply properly their clinical social work skills in forensic settings. That program, in which Judges, prosecutors and defense attorneys who work in this court participated as guest lecturers, graduated its first class of six fellows, in May 1993.
*120 Adoption by Judges of the unreasonable rates for compensation to certified social workers set forth in AO 73/92 and in the AGP Fee Guidelines would discourage participation in the courts by experienced, knowledgeable, talented and skilled certified social workers and would encourage participation in the court system by social workers who are the least trained members of that profession, those least suited by training, knowledge, skills and experience, to provide expert services.
To summarize, the rate for certified social worker services set forth in AO 73/92 and in the AGP Fee Guidelines deviates far more significantly from the average rates for such services in the community than do the rates set forth in those guidelines for psychiatrists and psychologists. The rate ignores New York’s statutory scheme of social work licensure and/or certification which recognizes three different levels of certified social workers. As contrasted with the rates set forth in these guidelines for psychiatrists and psychologists,[14] the rate set forth for certified social workers, however inadvertently, creates an inappropriate financial disincentive to properly qualified certified social workers[15] making available to the court *121 system their unique and critically important talents in the service of the effective administration of justice. The rates set forth in AO 73/92 and in the AGP Fee Guidelines manifestly fail to provide "reasonable compensation” to certified social workers as required by section 722-c and are fundamentally unfair to and constitute unwarranted discrimination against certified social workers as compared to other mental health professionals.

Comparison with Rate for Compensation of Attorneys

The Director indicates that since the rate for attorneys is $40 per hour for in-court time and $25 per hour for out-of-court time under the Assigned Counsel Plan, the rate for certified social workers should be $45 per hour. Under this theory, why do the AGP Fee Guidelines list the hourly rate for psychiatrists at $125, for psychologists at $90, for forensic experts at $60, for pathologists and other medical specialists at $200, for scientific experts and accountants at $75 to $100, et cetera, when those rates far exceed the rate for attorneys? Why shouldn’t all experts’ hourly rates be limited to the same hourly rates as authorized for attorneys?
The disparity between the fees paid to experts and the fees paid to attorneys has its roots in the fact that experts and attorneys are paid pursuant to different statutes. Lawyers are *122 paid pursuant to County Law § 722-b, where the Legislature has set the hourly rate for reimbursement. Experts are paid pursuant to County Law § 722-c, where the Legislature has vested in the courts the responsibility and authority to set the rate for reimbursement.
Although this court views section 722-b as providing an unconscionably low hourly rate for the compensation of attorneys, and believes that attorneys, as professionals, are entitled to be paid a wage that is in keeping with their level of professional training, skill, experience and knowledge, and with the significant professional responsibility they shoulder, the woefully inadequate level of compensation for attorneys is an issue that is separate and distinct from the setting of a reasonable rate for compensation of experts.
In providing for compensation to attorneys, the Legislature authorized payment for what constitutes competent representation in a particular category of case, for which a common value was set, however improperly meager the amount. By contrast, the Legislature intelligently chose to vest in the courts, which are in the best position to assess the nature and extent of the expert services in a given case, the responsibility and authority for determining "reasonable compensation” for such services on an expert-by-expert, case-by-case basis. This was altogether appropriate because the degree of expertise, specialization, training and experience may differ dramatically depending upon the issues which the expert is being called upon to help resolve and the nature of a particular case. The court’s assessment is not simplistically restricted to the discipline or license of the expert.
As such, the Director’s contention comparing the rate of compensation of attorneys to that of certified social workers is inappropriate. In effect, she is asking this court to mix apples and oranges. Although this court urges the Director to work vigorously to raise attorney rates to a far more appropriate level, the fact that those rates are woefully inadequate does not justify a finding by this court that "reasonable compensation” for an expert must be meager because attorneys are paid at an unreasonably low rate. Simply put, the unreasonably low rate established for attorneys by the Legislature cannot be used to justify a court, in the exercise of its independent decision-making responsibility, in directing unreasonably low compensation for an expert. After all "[t]he court shall determine reasonable compensation for the services and direct *123 payment to the person who rendered them” (County Law § 722-c [emphasis added]).

Municipal Budget Constraints

Services compensated pursuant to County Law § 722-c are a charge against the municipality in question and constitute a use of precious governmental funds. However, this cannot be the overriding concern when the ability of the court to carry out its essential function of assuring justice and due process is implicated. As noted in Ake v Oklahoma (470 US 68 [1985]), due process entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system. Such assistance must include competent mental health expertise when it can assist the court in achieving a just adjudication of a criminal case where the defendant’s mental status is an issue. Other than an economic interest, there are no State interests that weigh against recognition of this right. The Supreme Court soundly rejected these economic arguments as lacking in substance given the compelling interest of the State and the defendant in a just disposition of a criminal case.
The judicial branch of government has altogether too often been treated as the poor, shunned stepchild in both Federal and local governments. In contrast to the raises provided to employees of the executive and legislative branches, increases in salaries for Judges have lagged by several years. Logistical support for Judges and courts pales in comparison to that provided to executive and legislative bodies and agencies. Most Judges in our State’s trial courts lack computers in their chambers on which to draft opinions. Fax machine availability, photocopying capacity and access to modern legal research tools are sorely limited. Court staffs have been reduced to a more significant extent than staffs in the executive and legislative branches of government.
To the extent that the judiciary and the court system are treated as an unequal branch of government, the ability of government as a whole to function most effectively is negatively impacted. The failure of the legislative and executive branches to supply adequate funds to the court system and to pay for counsel and expert services to assist indigent litigants risks undermining their right to individualized justice that is a hallmark of our constitutional and democratic system.
Judges have a statutory obligation to determine reasonable compensation of experts they assign pursuant to section 722-c. *124 This determination should be based on the reasonable value of the services provided, taking into account, (1) the level of skill, training, experience, talent and expertise of the expert, (2) the nature, extent and quality of the necessary services provided, and (3) the complexity of the issues involved which were the subject of the expert services. The City’s economic health is not a factor that is properly implicated in the determination of the reasonableness of compensation for an expert assigned pursuant to section 722-c. Accordingly, the Director’s contention that the City’s economic difficulties permit or provide impetus, let alone dictate that the courts approve less than reasonable compensation to experts assigned pursuant to section 722-c, must be emphatically rejected.
RECONSIDERATION IN THE INSTANT CASES
In the two cases in question, in response to defense counsel’s request for expert assistance, pursuant to County Law § 722-c, this court appointed Hillel Bodek, M.S.W., C.S.W., "a clinical social worker whose expert services in the clinical evaluation, treatment and arranging for appropriate services for multiply handicapped defendants (those who suffer from a combination of neurological/developmental disabilities and emotional disorders) are often called upon by the Judges of this court, the office of the District Attorney of New York County and the defense Bar * * * to evaluate clinically and to facilitate appropriate disposition for such defendants” (People v Villanueva, 139 Misc 2d 751, 759, n 9 [Sup Ct, NY County 1988]), "a dedicated and talented forensic clinical social worker”, whose participation in the court system has, "substantially enriched * * * the administration of criminal justice” (People v Scala, supra, 128 Misc 2d, at 843) and whose "reputation for a high level of professionalism”, has been recognized by the State and Federal courts (Matter of Horsford, 699 F Supp 463, 464 [SD NY 1988]).
Mr. Bodek is licensed as a certified social worker in New York State, has the "R” endorsement on his license and is a board certified diplómate in clinical social work. In addition to his M.S.W. degree, he has post-graduate training and extensive supervised experience in psychotherapy and psychoanalysis, family therapy, psychodiagnostic testing and forensic mental health. He is the principal instructor and director of the New York State Society for Clinical Social Work’s Forensic Clinical Social Work Fellowship Training Program, has lec *125 tured in the area of forensic clinical social work around the country and has provided expert services, as a forensic clinical social worker, in courts of New York and other States, as well as in the Federal courts. He is well recognized, both in New York State and around the country, as the principal standard-setter and a respected leader in the field of forensic clinical social work.
Mr. Bodek provided expert services as a certified social worker, in one case (5615/89) performing a forensic mental health evaluation of a mentally ill defendant before the court on a violation of probation and, in the other case (2643/91), reviewing a defendant’s health and mental health records and assuring that he obtained appropriate health care services while in custody. He provided these necessary services in his usual highly professional, skilled, efficient and dedicated manner. The hours expended by him in these cases were reasonable and necessary to perform properly the expert services he was called upon to provide. His hourly rate, $100 per hour, and his total fee in each of these two cases, in one of which (5615/89) this court determined that extraordinary circumstances existed, are clearly reasonable. Any lower hourly rate or total fee would be unreasonable.
Accordingly, the application of the Director of the Assigned Counsel Plan of the City of New York for reconsideration of the two vouchers in question is granted. Upon reconsideration, her application for reduction of the $100 per hour rate to $45 per hour is denied. The Director of the Assigned Counsel Plan of the City of New York shall, within five days of receipt of this decision and order, attached to which are the vouchers in question relating to indictments 5615/89 and 2643/91 which she previously returned to this court for reconsideration, process such vouchers for payment to Mr. Bodek by the City of New York in the amounts of $5,200 and $200, respectively, as approved by this court.

. The Director did not notify Mr. Bodek of her application so that he could have an opportunity to be heard. This manner of proceeding raises basic due process problems.

. Prior to January 1, 1979 (eff date of L 1978, ch 700, § 1), in any case where the court directed compensation of attorneys appointed pursuant to section 722-b in excess of the statutory limits because of "extraordinary circumstances”, such determinations were automatically reviewed by the Presiding Justice of the Appellate Division, who could approve, deny or otherwise modify this compensation. (People v Perry, 27 AD2d 154 [1967]; *112 Matter of Armani, 83 Misc 2d 252 [Hamilton County Ct 1975].) The claims by experts appointed pursuant to County Law § 722-c, for compensation in excess of the statutory maximum of $300 when extraordinary circumstances were found were, similarly, subject to such a review, either by the appropriate Presiding Justice or Administrative Judge, in accordance with rules adopted by the various Appellate Divisions.
Effective January 1, 1979, the Appellate Division, First Department, took the position that this practice was superseded and that from then on, " '[t]he responsibility of passing on the compensation of counsel is at last with the Trial Judge, where it properly belongs’.” Attorneys on the First Department’s Assigned Counsel Plan were then notified, "that only the Trial Judge will now approve, disapprove or modify 18-B attorneys’ 'Activity Forms’ for payments of all types, except for representation on appeal; and that there will be no further or additional review by the Presiding Justice.” (People v Elliot, 98 Misc 2d 424, 426 [Sup Ct, NY County 1979] [see letters from Presiding Justice Murphy, dated December 6, 1978, and from the Administrator of the First Department’s Assigned Counsel Plan, dated December 4,1978, to this effect].) This new practice also extended to experts’ claims for compensation pursuant to County Law § 722-c.
Subsequently, rules of the other Appellate Divisions providing for review by the Presiding Justices or Administrative Judges of attorneys’ claims for compensation which involved extraordinary circumstances were struck down as being in derogation of the statute. (Matter of Kindlon v County of Rensselaer, 158 AD2d 178 [3d Dept 1990]; Matter of Byrnes v County of Monroe, 128 Misc 2d 700 [Rochester City Ct 1985], affd 131 Misc 2d 129 [Monroe County Ct 1986], revd on other grounds 122 AD2d 549 [4th Dept 1986], affd on appeal of further proceedings below 129 AD2d 229 [4th Dept 1987].) The reasoning and holdings in those cases involving attorney compensation under section 722-b are equally applicable to compensation of experts under section 722-c.

. In Werfel (supra), which was decided before the 1978 amendment of County Law § 722-b (L 1978, ch 700, § 1) the court held that, although not subject either to appellate review or review pursuant to CPLR article 78, determinations of compensation to attorneys under section 722-b could be reviewed through the layers of judicial administration, i.e., the appropriate Administrative Judges and the Administrative Board of the Courts. How *113 ever, in light of subsequent decisions, in Kindlon (158 AD2d 178, supra) and Byrnes (129 AD2d 229, supra) currently, Trial Judges’ orders fixing compensation for attorneys, pursuant to section 722-b, and for experts, pursuant to section 722-c, are not subject to review through the layers of judicial administration.

. The ACP Fee Guidelines state that fees for experts not enumerated on that list are, "negotiable”, which is explained as, "subject to prior agreement between expert and attorney and approval by the Court after consultation with the ACP Director” (emphasis added). The fee to be paid to any expert, whether or not enumerated in this fee guideline prepared by the Assigned Counsel Plan, is set by the court, which is solely responsible to make this judicial determination. The requirement the Assigned Counsel Plan appears to be attempting to establish, that the court make such judicial decisions only after consultation with the Assigned Counsel Plan’s Director, is in derogation of the statute, devoid of legal basis, and unenforceable. (See, People v Little, supra.)

. Both AO 73/92 and the AGP Fee Guidelines adopt as a guideline for payment of "reasonable compensation’’ to psychiatrists of $125 per hour and to physicians of $200 per hour. Psychiatrists are physicians who specialize in the treatment of mental disorders. As such, these guidelines treat psychiatrists either erroneously, as nonphysicians, or inappropriately, as second-class physicians. (See, n 14, infra.)

. The definition of clinical social work used by the New York State Society for Clinical Social Work, Inc. is as follows:
"Clinical social work practice is defined as the professional application of social work theory and methods to the differential diagnosis, prevention and treatment of bio-psycho-social dysfunction, disability and impairment, including mental and emotional disorders and developmental disabilities.
"Clinical social work practice is based on knowledge and theory of: biological, psychological and social development; normal human behavior; *115 psychopathology; the causes and effects of physical illness and disability; unconscious motivation; interpersonal relationships; family dynamics; environmental stress; social systems; cultural diversity; differential assessment and diagnosis of bio-psycho-social dysfunction and the differential planning and implementation of treatment of physical, emotional and mental disorders and habilitation of developmental disabilities, with particular attention to the person existing as a combination of biological, psychological and social elements in his or her environment.
"Clinical social work practice shares with all social work practice the goal of enhancement and maintenance of physical, psychological and social functioning of individuals, families, small groups and communities. It encompasses differential diagnosis of mental and emotional disorders and developmental disabilities undertaken within a bio-psycho-social framework; development and implementation of appropriate assessment-based treatment plans; documentation and review of treatment outcomes; and the teaching and supervision of clinical social work practice.
"Clinical social work practice methods and approaches include, but are not limited to: differential diagnostic assessment and treatment planning; administration and interpretation of tests and measures of psychosocial functioning; implementation of appropriate assessment-based treatment plans, including brief and long-term psychotherapy with individuals, couples, families and groups, habilitation, crisis intervention, hypnosis, biofeedback, patient education and client-centered advocacy; and the teaching and supervision of and consultation about clinical work practice.” (See, Letter of New York State Society for Clinical Social Work, Inc. to this court [June 1, 1993].)

. Currently, all 50 States, plus the District of Columbia, Puerto Rico and the Virgin Islands, license and/or certify social workers. Of these, 38 have multi-level licensure, recognizing different levels of professional social work training, experience and competence. Six States, including New York, recognize various levels of professional social work training, experience and competence in advanced clinical practice by establishing a level at which social workers licensed in those States are eligible for medical insurance reimbursement for the clinical services they render. Twenty-five States specifically license clinical social workers using that title and others recognize advanced clinical practice through the use of other terms. Twenty-seven States, including New York, mandate medical insurance coverage for clinical social work services when provided by a properly qualified clinical social worker, if such services would be covered when rendered by a psychiatrist or psychologist. (See, Whiting, State Comparison of Laws Regulating Social Work [Natl Assn of Social Workers, May 1992].)

. For instance, pursuant to Public Law 101-239 (the Omnibus Budget Reconciliation Act of 1989), since July 1, 1990, Medicare covers services in *116 the diagnosis and treatment of mental disorders when rendered by clinical psychologists and clinical social workers, but not by nonclinical psychologists or nonclinical social workers. New York State mandates medical insurance reimbursement for services to diagnose and treat mental and nervous disorders rendered by only certain certified social workers. (L 1984, ch 990, enacting Insurance Law § 3221 [l] [4] [D]; § 4303 [n]; 8 NYCRR 74.5 [d]; L 1977, ch 893, enacting Insurance Law § 3221 [l] [4] [A]; § 4303 [i]; 8 NYCRR 74.5 [c].)

. It is well established that there is a distinction between general practitioners and board certified physicians in relation to payment under most medical insurance and various government programs and in their salaries.

. These fees are for individual psychotherapy sessions, not necessarily for a full 60 minute hour of treatment. The standard duration of an individual psychotherapy session in New York City is 45 minutes. (Letter of the New York State Society for Clinical Social Work, Inc. to this court [June 1, 1993].)

. See, n 10, supra.

. See, n 10, supra.

. Since the social work fee information is based on fees for individual psychotherapy sessions, a so-called therapy hour, which have an average length of 45 minutes, these rates must be multiplied by a factor of 1.33 to obtain a rate for a full 60 minute hour, the applicable time period for billing of services rendered pursuant to section 722-c.

. The average fee for a 45 minute individual psychotherapy session with a psychologist in the Northeastern region of the United States is approximately $90. This yields an average rate of $120 for a full 60 minute hour of professional services by a psychologist. Comparison of the most frequently charged fees for administration of various psychological tests with the average time for administration and scoring of those tests, yields an average rate of $120 for a full 60 minute hour of psychological testing services. (See, 17 [No. 12] Psychotherapy Finances [1992].) The average fee for a 45 minute psychotherapy session with a psychiatrist in New York City is between $125 and $150. This yields an average rate between $167 and $200 for a full 60 minute hour of professional services by a psychiatrist, approximating the $200 per hour rate for physicians, pathologists and other medical specialists as set forth in AO 73/92 and in the ACP Fee Guidelines.
It appears as though the Chief Administrator of the Courts and the Assigned Counsel Plan intended to establish as the recommended rate for psychiatrists and psychologists the average rates for services rendered by them in the community. However, in doing so, they appear to have utilized the average rates for a therapy hour (which, in reality, is 45 minutes, not a full 60 minute hour), thereby erroneously establishing their recommended hourly rate for psychiatrists at between 63% and 75% of the $167 to $200 it should be (representing a 25% to 37.5% reduction), and for psychologists at only 75% of the $120 it should be (representing a 25% reduction).

. It appears as though the Chief Administrator of the Courts and the Assigned Counsel Plan intended to establish as a recommended rate for certified social workers the average rate, for services rendered by them in the community. In doing so, they apparently set the fee using the average rate for a therapy hour (which, in reality, is only 45 minutes, not a full 60 minute hour) provided by certified social workers who do not have either the *121 "P” or "R” endorsements on their license and who are not board certified in clinical social work, $45. By doing so, they not only established a rate for certified social workers that was 25% less than what it would be for a full 60 minute hour of professional services rendered by a beginning certified social worker, $60, but compounded the problem by failing to account for the difference between the various levels of certified social workers as previously detailed in this decision.
Thus, the hourly rate of certified social workers with the "R” endorsement on their license who are also board certified in clinical social work, whose average rate is $115 for a full 60 minute hour, is reduced by 61% under these fee guidelines, more than twice the 25% reduction for psychologists and between 1% and 2 times the 25% to 37.5% reduction for psychiatrists, as detailed in footnote 14 (supra). Similarly, the hourly rate of certified social workers with the "R” endorsement on their license who are not board certified in clinical social work, whose average rate is $100 for a full 60 minute hour, is reduced by 55% under these fee guidelines, more than twice the 25% reduction for psychologists and between IV2 and 2 times the 25% to 37.5% reduction for psychiatrists, as detailed in footnote 14 (supra). Finally, the hourly rate of certified social workers with the "P” endorsement on their license who are not board certified in clinical social work, whose average rate is $80 for a full 60 minute hour, is reduced by 44% under these fee guidelines, 1% times the 25% reduction for psychologists and between 1% and lVs times the 25% to 37.5% reduction for psychiatrists, as detailed in footnote 14 (supra).