OPINION OF THE COURT
Budd G. Goodman, J.
In an event of increasing frequency as defense attorneys expand their utilization of other than counsel resources to *669 prepare a variety of prepleading and presentence reports to aid them in advocating for criminal defendants, Consultants for Criminal Justice Alternatives (CCJA), has submitted to this court a claim for compensation pursuant to County Law § 722-c in the amount of $1,260 for 28 hours of other than counsel services at a requested hourly rate of compensation of $45. For the reasons set forth below, this claim is approved in the amount of $810, reflecting compensation for 27 hours of services at an hourly rate of $30.
HISTORY OF THE CASE
Defendant was before this court charged with the crimes of robbery in the first degree and robbery in the second degree. Defense counsel sought and obtained from this court an order pursuant to County Law § 722-c authorizing CCJA to prepare a prepleading report to aid him in plea negotiations. The CCJA court liaison assigned to this case interviewed the defendant and defendant’s mother and girlfriend during July and August 1992. He submitted a prepleading report and appeared in court with defense counsel on three occasions in August and September 1992. After pleading guilty to robbery in the second degree, defendant was sentenced to IV2 to 4A years in State prison, on December 3, 1992. On July 16, 1993, CCJA submitted to this court a claim for compensation (a so-called 722-c voucher) for the other than counsel services they rendered in this case. The voucher listed the following services for which compensation was sought and the hours expended on each: "Court Advocacy, 8/20, 8/28, 9/18/92, 9 hours; Write/Edit Report, 8/24/92, 7 hours; Clerical, 8/29/92, 1 hour; Client Interview, 7/27/92, 8/11/92, 5 hours; Relative Interview, 7/30/92, 8/18/92, 4 hours; Attorney Interview, 7/21/92, 1 hour; and Referral Research, 8/26/92, 1 hour.”
Because CCJA sought compensation in excess of $300, on July 28, 1993 this court directed that the voucher be returned to them with a direction that they provide an affidavit setting forth the "extraordinary circumstances” of the case that warrant approval of compensation in excess of $300.[1] By letter dated September 27, 1993, CCJA’s office manager responded *670 noting that "[y]our concern was that the amount exceeds the norm. I am therefore enclosing a copy of the fee guidelines. This was given to us by [the] Assigned Counsel Plan * * * The fee is $45.00 per hour.” Attached to CCJA’s letter was a copy of the Fee Guidelines for Expert Witnesses Under County Law 722-c promulgated by the Assigned Counsel Plan, in February 1992, [2] on which the amount of $45 per hour for "certified social worker” services was circled.
Because CCJA’s September 27, 1993 letter did not provide information about the "extraordinary circumstances” of the case but, rather, only an explanation of the hourly rate of compensation it sought, this court again requested an explanation from CCJA of the "extraordinary circumstances” of the case. On December 17, 1993, the court liaison who handled this case replied with an explanation of what was involved in CCJA’s provision of each of the type of services listed on their voucher. In response to further inquiry from this court, on March 24, 1994, CCJA submitted a copy of its prepleading report, an explanation of CCJA’s services, a brochure about their program and a description of the qualifications of the court liaison who prepared the report. He stated his qualifications as, "[f]or the last two years I have held the position of Court Liaison with Consultants for Criminal Justice Alternatives. During this time I have written over sixty reports, for both male and female clients.” In response to further inquiry regarding his education and training, the court liaison informed this court that he is not licensed as a certified social worker in this or any other State, has earned a BA degree in business administration but has not earned any degree in social work.
QUESTIONS PRESENTED
The determination of "reasonable compensation” in this *671 case presents several issues. First, should all of the services for which compensation is sought be approved for compensation, as reasonable and necessary, for the total hours sought and, if so, at the same rate (particularly for the hours relating to travel time, waiting in the courtroom for the case to be called, report writing and general clerical functions)? Second, what is the appropriate hourly rate of compensation for the services rendered? Third, do extraordinary circumstances exist in this case which permit the court to approve compensation in excess of $300?
APPROVAL OF THE SERVICES PROVIDED
This court finds that the services rendered in the areas described by CCJA in its voucher as "court advocacy”, "client interview”, "relative interview”, "attorney interview” and "referral research” were reasonable and necessary. To the extent that the time claimed for interviews with the defendant and his mother and for "court advocacy” includes the travel time needed for the court liaison traveling to and from court, to and from the detention facility where defendant was confined, and to and from defendant’s mother’s home,[3] this court finds that such expenditure of travel time was reasonable and necessary and is compensable pursuant to section 722-c. Similarly, to the extent the time spent for "court advocacy” includes time spent waiting in the courtroom for the case to be called, this court finds that the expenditure of this time was reasonable and necessary and is, therefore, compensable pursuant to section 722-c.
When a provider of other than counsel services must travel from their office in order to provide specific services, the travel becomes a material and necessary part of the service and the service provider is entitled to be compensated for the time thus expended just as they are for time they spend in providing actual direct services. Such compensation should be at the *672 same hourly rate that applies to the direct services provided, just as the time spent waiting in the courtroom for a case to be called should be reimbursed at the same hourly rate as the time spent before the Bench providing a direct service. Basing the hourly rate of compensation on the qualifications, skill, knowledge and expertise of the service provider, without regard to the relative difficulty and skill needed for each service provided, is appropriate. It is the time expended by the service provider that is being compensated at an hourly rate which takes into account the service provider’s qualifications, skill, knowledge and expertise. Thus, a physician, psychologist, clinical social worker, social worker, investigator or other service provider who travels to a correctional institution to interview a defendant or who must wait in the courtroom for the case to be called is entitled to be compensated for that travel time and waiting time at the same hourly rate of compensation as they are reimbursed for other services they provide in a case, not at an hourly rate of compensation for travel or for waiting in the courtroom for a case to be called that would apply equally to all classes of service providers.
Turning to the claim of seven hours for "write/edit report”, as a general rule, it is reasonable that the writing and editing of a report will take one hour for each hour of examination and interviewing (obviously not including travel time or interviewing defense counsel) and review of relevant records. Thus, the seven hours claimed in this case for "write/ edit report” is reasonable. The preparation of a report is often the culmination of evaluative efforts of a physician, psychologist, clinical social worker, social worker or other service provider. The preparation of a report requires a thoughtful review and analysis of all of the data collected, organizing and integrating this information and presenting it in a coherent manner. The finest, most comprehensive and thorough examination or investigation can easily be devalued, indeed rendered useless, if its results are not presented properly.
Turning, however, to the claim for what CCJA denotes as "clerical”, what they explain includes time expended to complete paperwork needed for their internal record-keeping on the case and to prepare their 722-c voucher, this court holds that these activities should not be compensated as a separate other than counsel service. These activities represent carrying out of internal administrative functions incidental to their provision of services, the cost of which is reflected in their hourly rate of their "reasonable compensation”. Thus, *673 the claim for compensation for one hour for "clerical” activities as a separate service is denied.
In summary, this court approves for compensation a total of 27 hours of services, including travel time and time waiting in court for the case to be called, as reasonable and necessary in this case, to be compensated at a uniform hourly rate of compensation.
DETERMINATION OF "REASONABLE COMPENSATION”
Having determined the number of hours approved for compensation, this court must now turn to the issue of determining the "reasonable compensation” for these services. "Judges have a statutory obligation to determine reasonable compensation of experts they assign pursuant to section 722-c. This determination should be based on the reasonable value of the services provided, taking into account, (1) the level of skill, training, experience, talent and expertise of the expert, (2) the nature, extent and quality of the necessary services provided, and (3) the complexity of the issues involved which were the subject of the expert services.” (Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], 159 Misc 2d 109, 123-124, supra.)
One, with regard to the level of skill, training, experience, talent and expertise of the service provider, the other than counsel services rendered in this case were provided by a CCJA "court liaison” whose academic training consists of earning a BA degree in business administration. He lists his relevant experience as having written approximately 60 prepleading/presentence reports over the past two years. This paraprofessional is not a psychiatrist, psychologist or certified social worker, nor has he earned even an undergraduate degree in any human service field.
This court notes with concern that CCJA and the Assigned Counsel Plan apparently believe that the services rendered in this case are the equivalent of those rendered by certified social workers. This view perpetuates the unfortunate canards that when services to provide psychosocial data about an individual are rendered by someone other than a psychiatrist or psychologist, the provider can be referred to as a social worker and that anyone, no matter what their level of education and training, can competently and adequately provide professional social work services. Social work is a profession, the practice of which requires professional education and *674 training, just as is required for psychiatry and psychology. As with any other profession, social work is based on a body of knowledge and skills. A person is not a professional social worker because he or she performs a social work task. One is a professional social worker by virtue of having assimilated a foundation of professional knowledge and having developed a range of professional skills and competence as a result of having completed a course of professional education and training.[4]
Persons without training as professional social workers are often employed by government agencies and private sector organizations to provide certain social work services. The annual salary for such paraprofessionals usually ranges between $20,000 and $35,000, depending on the job title, longevity of service and employing agency/organization. This court holds that for the purposes of setting an hourly rate of compensation, such service providers are not certified social workers and should not be considered the equivalent thereof. Taking into consideration the average cost of fringe benefits and other than personnel costs of such an individual or agency/organization, and the average salary of such a service provider, the reasonable hourly rate of compensation for the service provider in this case is $30.
Two, with regard to the nature and extent of the necessary services provided, the other than counsel services provided in this case were not expert services.[5] To understand the nature *675 of these services one must look to CPL article 390, which deals with the wide range of different types of prepleading [6] and presentence investigations and evaluations.
The most common "390” assessment is a prepleading or presentence investigation conducted by the Department of Probation, the scope of which is set forth in CPL 390.30. The second, less common type of "390” assessment, is to aid in the preparation of a prepleading or presentence memorandum submitted by a defense attorney and, far less frequently, by a prosecutor, pursuant to CPL 390.40. Such memoranda are analogous to the reports of prepleading or presentence investigations by the Department of Probation, other than that they advocate either a defense or a prosecution view with respect to disposition of the case.[7]
The third, and least common type of "390” assessment, is a physical or mental examination of a defendant by a qualified *676 health or mental health clinician pursuant to CPL 390.30 (2).[8] In New York County, the overwhelming majority of such "390 examinations” are mental health examinations performed at the Court Psychiatric Clinic.[9] These examinations are requested by the court because defense counsel has informed the court that a defendant has a history of emotional problems or by Department of Probation because the investigating probation officer either learns of a defendant’s history of emotional problems or suspects that a defendant whom he or she has interviewed has emotional problems which require assessment by a trained mental health clinician.
Far less frequently, a more comprehensive "390 examina *677 tian” by a qualified health or mental health clinician may be required. As contrasted with the brief examinations conducted at the Court Psychiatric Clinic which involve primarily clinical interviews with the defendant (and, when indicated, psychological testing) and usually take at the most four hours to conduct, these more comprehensive examinations often include: conducting a detailed review of the defendant’s family and marital, medical, psychiatric, substance use, developmental, educational, vocational, juvenile and criminal justice, and other past personal history and social circumstances; performance of a comprehensive and detailed mental status examination; administration and interpretation of a battery of psychodiagnostic tests; conducting interviews with significant others involved in the case or in the defendant’s life; gathering and reviewing records relating to the defendant’s history and the case; and arranging for and reviewing the results of additional evaluations or tests conducted by other professionals that may be needed in a particular case (such as brain scans, EEG’s, laboratory tests, neurological or medical examinations, etc.).[10] Such a comprehensive examination coupled with the preparation of the report of its results and the associated conferences with counsel (and the court and prosecutor, if indicated) may take anywhere from 10 to over 100 hours to complete. As distinguished from the brief "390 examinations” conducted by the Court Psychiatric Clinic, these comprehensive "390 examinations” have a much broader scope and may address a variety of clinical-legal issues particular to the case in question [11] and may involve intervention to aid defense counsel in working more effectively with a mentally disordered defendant. Depending on the examiner’s findings, these clinical-legal issues may impact on the outcome and the disposition of the criminal case.
Three, the quality of CCJA’s services were typical of the quality of services rendered by the Department of Probation in its preparation of prepleading and presentence reports and *678 is typical of such reports prepared by various alternative to incarceration agencies, organizations and service providers which this court has reviewed. The extent of the services, as previously described, was appropriate, reasonable and necessary to the task for which CCJA was appointed.
Four, with regard to the circumstances of the case, the issues presented in this case were not complex. This case involved a first felony offender for whom a plea to a lesser offense which would permit imposition of a nonincarceratory sentence was sought. Defendant did not suffer from any mental disorder or from any significant health problems. As CCJA noted in its report, defendant’s situation and circumstances are not unlike those often seen in Criminal Term.
In summary, the services in this case were rendered to prepare a prepleading memorandum for defense counsel’s use in the plea bargaining process. These paraprofessional services were not of a clinical nature and involved a case where the circumstances of the case and of the defendant were typical of those seen in Criminal Term and did not present any clinical issues. The extent and quality of the services were appropriate, reasonable and necessary to the task for which CCJA was appointed. Accordingly, this court approves an hourly rate of compensation of $30, as "reasonable compensation” for these services.
DETERMINATION OF "EXTRAORDINARY CIRCUMSTANCES”
Having determined that 27 hours of CCJA’s services in this case were reasonable and necessary and that an hourly rate of compensation of $30 would be "reasonable compensation” for these services, this court must now turn to consideration of whether this case presents "extraordinary circumstances” which would permit authorization of compensation in excess of $300.
In determining whether a case presents "extraordinary circumstances” for the purposes of County Law § 722-c, a court should consider: (1) the nature of the charges and proceedings in relation to which the other than counsel services were provided; (2) the complexity of the issues and problems presented for which the other than counsel services were required, including any unusual circumstances of the case that related to the provision of the other than counsel services; (3) the nature, extent and quality of the other than counsel services provided, including the professional skill, *679 knowledge and expertise displayed by the service provider; (4) the time expended in providing the other than counsel services and the reasonableness and necessity of the time expended; (5) the professional standing, training, experience, skill, knowledge and expertise of the provider of the other than counsel services; (6) the impact and importance of the other than counsel services in the resolution of the case;[12] and (7) the average fair market value of the other than counsel services provided. The fact that the amount of work provided in a case multiplied by the hourly rate which would constitute ",reasonable compensation” exceeds $300 does not necessarily render a case one where "extraordinary circumstances” exist.
Cases where a comprehensive "390 examination” is necessary because defendant has a mental disorder which may be relevant to his or her case and an evaluation of which is, therefore, necessary, and cases where clinical intervention is necessary to facilitate a defendant’s working effectively with counsel, obviously present "extraordinary circumstances”. These cases should be distinguished from those where a brief "390 examination” is needed to determine if a defendant suffers from a mental disorder for which treatment is needed and to outline the nature of such treatment needs. Depending on the circumstances and requirements of the particular case, cases requiring such a brief "390 examination” may or may not present "extraordinary circumstances”.
Cases where defense counsel makes an adequate showing to the court (based on the nature and seriousness of the charges, psychosocial data that defense counsel has obtained about the defendant that raises issues which may be relevant to mitigation of culpability or sentence, and defendant’s juvenile and criminal justice history) that a prepleading or presentence investigation, in addition to that available through the Department of Probation, is material and necessary to counsel’s effective presentation of arguments in support of defendant’s position in plea bargaining or at sentencing, also present "extraordinary circumstances”. This court notes that although it is becoming more common, it is an exception, rather than a general practice, that defense counsel finds it necessary to submit a prepleading or presentence memorandum pursuant to CPL 390.40.
*680 This case involves a first felony offender charged with a violent felony offense for which incarceration was mandatory unless defendant would be allowed to plead guilty to a lesser included offense. Although defendant did not have a history of mental illness, information about his family and personal background indicated that this data might be relevant to the eventual disposition of this case. The time spent by CCJA in providing the other than counsel services in this case was reasonable and necessary to complete the task for which CCJA was appointed by this court. Although he was not sentenced to a nonincarceratory sentence, CCJA’s report was a factor in the determination that defendant be permitted to enter a guilty plea to a lesser included offense and be sentenced to the minimum allowable sentence of incarceration for that offense. Accordingly, this court determines that this case presents "extraordinary circumstances” permitting authorization of payment of "reasonable compensation” in excess of $300.
CONCLUSION
This court determines that "reasonable compensation” for the services rendered by CCJA in this case shall be $810 computed as 27 hours of service to be compensated at an hourly rate of $30. This court further determines that "extraordinary circumstances” exist in this case warranting the approval of compensation for services other than counsel in excess of $300. Pursuant to section 722-c of the County Law it is, therefore,
Ordered that Assigned Counsel Plan of the City of New York process CCJA’s voucher in this case for payment to CCJA by the City of New York in the amount of $810.

. The Rules of the Chief Administrator of the Courts (22 NYCRR) § 127.2 (a) requires that "[w]henever an attorney, psychiatrist, psychologist or physician, or a person providing investigative, expert or other services, seeks compensation in excess of the statutory limits prescribed by article 18-B of the County Law * * * because of extraordinary circumstances, he or she shall submit with his or her claim a detailed affidavit stating the nature *670 of the proceeding, the manner in which the time was expended, the necessity therefor, and all other facts that demonstrate extraordinary circumstances.”

. The Assigned Counsel Plan fee guidelines and the fee guidelines contained in Administrative Order 73/92 of the Chief Administrator of the Courts are guidelines. They are not, nor can they be, controlling of a court’s judicial determination of "reasonable compensation”. (See, Matter of Director of Assigned Counsel Plan of City of N Y. [Bodek], 159 Misc 2d 109, 111-113 [Sup Ct, NY County 1993]; Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek] 159 Misc 2d 142, 146-147, n 4 [Sup Ct, NY County 1993].)

. Although this court would question why it was necessary to interview defendant’s mother in her home, "in order that CCJA might verify portions of the information given to us by the defendant,” rather than to interview her in CCJA’s office or by telephone as was done with defendant’s girlfriend, the determination by CCJA to conduct the interview in that manner was not unreasonable. Absent a significant basis to question the reasonableness or necessity of a particular manner of proceeding to perform other than counsel services, courts should not micro-manage the provision of other than counsel services and should leave the determinations of the details of how to proceed in providing other than counsel services to the service provider skilled in doing so.

. New York State law recognizes three levels of professional social work training, experience, knowledge and expertise. In addition, just as there exists in medicine and psychology board certification of advanced competence based on training and supervised experience, there exists nationally recognized board certification in clinical social work as an advanced area of specialty practice in the social work profession. (Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], supra, at 114-117.)

. County Law § 722-c permits a trial court to authorize "investigative, expert or other services” (emphasis supplied) necessary to the defense of a criminal defendant. CCJA’s services, although appropriate and necessary, were not of an expert nature and are easily distinguished from expert services. As CCJA noted in its December 17, 1993 letter to this court, after its report in this case was prepared, "a copy is then sent to the attorney * * * for his comments and any changes.” An expert would be obligated to conduct an independent and objective assessment of the defendant. Although an expert may advocate a position independently arrived at based on an objective assessment, the expert’s opinion would depend solely on that objective assessment, without regard to who retained the expert to conduct the assessment. Thus, an expert’s objective assessment may support defendant’s position and be helpful to defendant or it may not. Here, the other *675 than counsel services rendered were provided for the express and guaranteed purpose of "detailing alternative sentencing proposals,” and "advocating] for the minimum sentence permissible under sentencing guidelines for mandatory cases.”

. Pursuant to CPL 390.20 (3) a court may order presentence investigations and/or physical and mental examinations of defendants prior to plea in order to provide material that would reasonably aid in the administration of justice by facilitating the plea bargaining process. (See, People v Scala, 128 Misc 2d 831, 832 [Sup Ct, NY County 1985], referring to People v Crosby, 87 Misc 2d 1079, 1080 [Sup Ct, Bronx County 1976].)

. For many years the Legal Aid Society of the City of New York has had a Special Defender Services unit staffed by professional social workers and paraprofessionals who prepare prepleading and presentence memoranda and provide related social services to defendants represented by the Legal Aid Society. Nationwide, over the past decade, with the increased interest in pursuing alternatives to incarceration, various professional social workers, paraprofessionals and organizations such as CCJA have begun to offer similar services to defendants who are represented by assigned or retained counsel.
CCJA’s marketing brochure supplied by them to this court describes CCJA as offering "pre-pleading and pre-sentencing reports detailing alternatives to incarceration or advocating for reduced sentencing.” The brochure states, in pertinent part, that CCJA "provides carefully structured, individualized pre-pleading and pre-sentencing reports detailing alternative sentencing proposals. They include completed arrangements for a variety of options for the court to select, which may include: community service, financial restitution [and] residential arrangements. CCJA’s reports include: employment, vocational training, education, counseling [and] reduced sentence: advocate for the minimum sentence permissible under sentencing guidelines for mandatory cases.” "Referrals, as appropriate” are made for "vocational schooling,” "[further] formal schooling, GED or [educational] remediation,” and "psychological assessment/treatment, drug/alcohol therapy, etc.”

. These exams are most often performed by psychiatrists or psychologists. They are also performed, on a more limited basis, by clinical social workers. There is a clear distinction between a properly qualified board certified clinical social worker, who would be competent to perform a clinical evaluation of a defendant, and a professional social worker who is not board certified as a specialist in clinical social work. (See, Matter of Director of Assigned Counsel Plan of City of N. Y. [Bodek], 159 Misc 2d 109, supra; Matter of Director of Assigned Counsel Plan of City of N Y. [Bodek] 159 Misc 2d 142 [Sup Ct, NY County 1993], supra.) Whereas all certified social workers can be expected to gather and report adequately a defendant’s social history, only board certified clinical social workers, as a group within the larger group of professional social workers, possess the specialized and refined clinical skills, developed and honed over years of postgraduate training and supervised clinical experience, to provide appropriate clinical examinations and evaluations for forensic purposes. (Supra, at 151-153.)
The simple gathering and reporting of a defendant’s social history by a certified social worker, to assist in the preparation of a defense prepleading or presentencing memorandum pursuant to CPL 390.40, is analogous to the work of a probation officer and should be compensated as such. However, the clinical examination and evaluation of a defendant by a board certified clinical social worker is analogous to the similar clinical services of a psychiatrist or psychologist and should be compensated as such.

. The Court Psychiatric Clinic has informed this court that it performed approximately 900 such exams between January 1, 1992 and June 30, 1993, approximately 50 "390 examinations” per month. The clinic’s director has noted that the clinic’s objective in conducting "390 examinations” is "to answer certain questions for the court with respect to diagnosis, prognosis and therapeutic recommendations for a defendant. The 390 exams involve primarily clinical interviews with the defendant and, when indicated, psychological testing. Such evaluations usually take at the most 4 hours to conduct.” This court has reviewed the reports of many such examinations over the past decade. These reports, usually two to four pages in length (the lengthier ones being those where psychological testing is performed in addition to a clinical interview), describe the reason for referral, briefly detail the defendant’s history, provide the results of a brief mental status examination (and the results of psychological tests if these were performed), state a diagnosis and make general treatment recommendations.

. In rare cases, these comprehensive evaluations may be conducted on a longitudinal basis, affording the examiner the opportunity to observe the defendant’s behavior and psychosocial functioning over a period of time. (See, People v Scala, supra, 128 Misc 2d, at 832, n 2.)

. These clinical-legal issues may include criminal responsibility, extreme emotional disturbance, capacity to knowingly and voluntarily waive Miranda rights, the effects of intoxication on capacity to form intent, the defense of justification, dangerousness, Clayton relief and other issues relating to mitigation and/or dispositional alternatives.

. However, the fact that the other than counsel services rendered in a case do not achieve a result favorable to a defendant should not be a consideration in determining that "extraordinary circumstances” do not exist.